IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ.,<br>*Plaintiff* | : | No. 3:23-cv-00056 (JBA) |
| v. | : | |
| KATIE DYKES,<br>*Defendant* | : | |

## DECLARATION OF COLONEL CHRIS LEWIS

I, Colonel Chris Lewis, declare as follows:

## I. Background

1. I am the Director of Law Enforcement for the Environmental Conservation Police ("EnCon"), which is a division within the Bureau of Outdoor Recreation within the Connecticut Department of Energy and Environmental Protection ("DEEP"). I have held that position for approximately three years. Prior to joining DEEP, I held various positions in law enforcement for over twenty years in the state of Alabama.

2. EnCon provides the majority of the security and public protection services within State parks and forests. EnCon officers are trained police officers appointed by the Commissioner of DEEP to enforce the State and Federal laws and regulations pertaining to conservation, fish and game, boating, recreational activities, and State parks and forests. Additionally, EnCon officers have the authority to enforce various other criminal laws, and

1

broadly speaking, they have the same general enforcement powers as other police officers. *See* Conn. Gen. Stat. § 26-6.

3. As the Director of EnCon and head of the command staff, I am responsible for the overall command and supervision of EnCon personnel, equipment procurement, hiring of personnel, implementing law enforcement policies and procedures, and coordinating with other divisions within DEEP and other law enforcement agencies as necessary.

4. I am familiar with EnCon's organization, mission, personnel, and law enforcement policies and procedures, and the laws and regulations that apply in the State parks and forests system, including the regulations concerning hunting and the carrying and use of firearms.

5. The testimony in this Declaration is based upon my personal knowledge, which I have obtained through a combination of my training, observations, and work experience; from reviewing relevant documents, rules, and regulations regarding DEEP, EnCon, and the State's parks and forests, and in speaking with colleagues within and outside DEEP who themselves are knowledgeable about the subjects discussed herein. Any information I obtained from those outside sources is consistent with my own understanding.

## II.   EnCon personnel and resources

6. There are currently 52 EnCon officers stationed in three geographical districts in Connecticut: West, East, and Marine. The Marine district covers

the towns along Long Island Sound, with 16 EnCon Officers assigned to this district. The West district generally covers the inland towns west of the Connecticut River and has 17 officers. The East district covers the towns east of the river and has 15 officers. There are an additional four officers assigned to Headquarters located at 79 Elm Street in Hartford, who perform office administration work.

7. In addition to the permanent officers described above, EnCon annually hires 20-30 temporary seasonal employees, referred to as "EnCon Rangers," that are stationed in various parks and forests during peak seasons, most of whom serve during the busy summer months. The rangers can issue infractions for violations of park and forest regulations, and function essentially like a security patrol. If an incident requiring law enforcement intervention beyond a warning or infraction for a park regulation were to take place, the ranger would contact an EnCon officer.

8. EnCon officers are highly trained and carry firearms within the course and scope of their employment.

9. EnCon Rangers are unarmed. Carrying firearms would require the rangers to obtain additional certification, and undergo additional background checks and polygraph, psychological and drug testing, which would be time consuming and costly, would make the hiring process more burdensome, and would likely make recruitment much more difficult. Carrying firearms would

also require the rangers to wear body cameras, which would also be very costly.

10. Pursuant to a Directive dated August 26, 1992, which remains in effect, all DEEP employees are prohibited from carrying firearms unless otherwise required by his or her job. A true and accurate copy of that Directive is included as Exhibit 109.

11. EnCon's resources in terms of personnel are extremely limited, especially considering the breadth of responsibilities EnCon has over locations spread across the State. EnCon is actively seeking to hire new officer positions, but those hires are unlikely to be finalized until next year. EnCon's hiring authorization is currently capped at fifty-nine officers.

12. Despite its relatively small staff, EnCon is charged with enforcing the conservation laws related to hunting, fishing, trapping, wildlife, as well as enforcing the boating laws, laws related to All Terrain Vehicles and snowmobiles, and the park and forest rules and regulations, in more than 100 locations across Connecticut. In addition, EnCon is responsible for fielding and responding to reports from visitors and others about a wide range of matters, including complaints of violations of laws or regulations or other incidents that require the attention of law enforcement. EnCon has a phone line where anyone can call to report an incident. In February 2023, EnCon received approximately 1400 calls. In busier summer months, EnCon may receive approximately 2000 calls per month. For instance, in June 2022,

EnCon received approximately 1900 calls. The subject of the calls ranges widely, from complaints of violations of rules or regulations to bear sightings. Many of the calls receive an immediate response from EnCon.

13. Given its limited personnel and breadth of responsibilities, in order to best achieve its mission, EnCon must carefully allocate its personnel based on the season and activity. For example, during spring hunting season, EnCon increases its presence in areas where hunting is permitted in order to monitor those activities and the potential safety and conservation issues that may arise. During summer months, EnCon increases its presence in the State parks and forests, particularly beaches and designated swimming areas, which can become extremely crowded.

14. If EnCon were to receive a report that required an immediate response, and the report pertained to a location where no EnCon officer was stationed at the time, an officer would need to leave their post and travel to that location, sometimes traveling long distances. That would pull EnCon officers from their duties—e.g., monitoring hunting activities during hunting season—to respond to those incidents.

### III. Impact of removing the prohibition on carrying firearms in State parks and forests.

15. I am familiar with the firearms prohibition in State parks and forests, which is set forth in § 23-4-1 of the Regulations of Connecticut State Agencies. I am

also familiar with the hunting regulations, which are set forth in the 2023 Connecticut Hunting and Trapping Guide ("2023 Guide").

16. The firearm prohibition in parks and forests serves several purposes.

    a. First, it protects the safety of visitors and any DEEP employees who may be working on site. The presence of firearms, particularly if alcohol is involved, increases the risk of confusion, alarm, and conflict among visitors. There is substantial risk that discharging a firearm, even in self-defense, would strike a bystander unintentionally, particular in many of our parks that can become very crowded during the summer months. Further, in many of our parks and forests, including beaches and swimming areas, there are no locations for proper storage of the firearm.

    b. Second, the firearm prohibition serves EnCon's conservation and environmental goals. Hunting on state lands is only permitted in a handful of carefully circumscribed locations, and within those locations is subject to additional regulations. The firearm prohibition helps to enforce the hunting regulations. If a visitor is prohibited from carrying a firearm, it is more difficult for him or her to hunt in an unauthorized location or out of season without being detected by EnCon or reported by another visitor. Being able to better enforce the hunting restrictions serves the State's conservation goals by ensuring that animals are not overhunted, and that their populations can continue

    sustaining themselves into the future. It also enhances the overall park experience because when there is no hunting in unauthorized locations, the wildlife in those locations are generally more trusting and interactive with visitors, which enhances wildlife viewing and the visitors' overall experience.

c. Third, prohibiting firearms enables DEEP to maintain the parks and forests as places of peace, relaxation, and quiet enjoyment for individuals and families. Consistent with those ideals, EnCon, although a law enforcement entity, does not conduct itself as an ordinary police force and is not viewed by visitors as such. Instead, EnCon officers are often referred to as "game wardens," and are utilized to provide information and assistance to visitors, and to generally help visitors use and enjoy the locations within our jurisdiction. Indeed, the 2023 Guide, in the section entitled "what to do when approached by an [EnCon] officer," states that EnCon officers "can help explain laws and also provide information about outdoor opportunities and conditions in your area," and that "[t]hey can assist in making your outdoor experience in Connecticut more enjoyable." Exhibit 108 at 47. Further, a DEEP Policy Directive issued in October, 1996 ("1996 Directive"), which still remains in effect, states: "It is the policy of the State Parks Division to emphasize the 'park ranger' image and apply a strict law enforcement profile only as dictated by the

situation at hand. Employees should consciously avoid an overly aggressive approach to law enforcement." Instead, the 1996 Directive required park police to provide information to visitors about applicable regulations to "instill in the visitor an understanding and appreciation for the value of recreational areas, the proper use of recreational areas and respect for other visitors." A true and accurate copy of the 1996 Directive is included as Exhibit 116. Though the park police were consolidated with EnCon and the 1996 state parks directive is not directly applicable to EnCon, EnCon shares in that philosophy and has always sought an education-first perspective when performing recreational law enforcement.

17. If visitors were able to carry firearms in State parks and forests, it would undermine the important interests set forth above. In particular, it would raise substantial safety concerns, particularly in our more crowded parks and forests. It may make it more difficult to enforce the hunting and anti-poaching regulations. It would also alter the nature of our parks, and the way visitors view them as places of peace and inclusion. It could also impact the nature of the relationship that EnCon has deliberately cultivated with visitors as the image of conservation officers or game wardens providing information and facilitating visitors' use and enjoyment of our parks and forests, and more frequently require EnCon to take a more guarded approach

to public contacts or what may be viewed as an aggressive approach to law enforcement if people are frequently carrying firearms.

18. In addition, given that EnCon's personnel and resources are limited, permitting firearms could burden EnCon's ability to carry out its mission and responsibility of enforcing hunting laws and ensuring safety in our locations across the State. For example, there is no doubt that if people could carry arms in State parks and forests, EnCon would receive many calls and reports from visitors regarding firearms they had observed, or other firearms-related incidents. EnCon would respond to a call investigating a complaint about a firearm, which may require EnCon officers to leave their posts where they are needed—i.e., monitoring hunting activity during hunting season—to travel to the location to investigate. EnCon is already short staffed, and permitting the carrying of arms would place an even greater burden on its personnel, and make it more difficult for EnCon to ensure the safety and enjoyment of the parks and forests.

19. Removing the firearm prohibition on an immediate basis, without permitting EnCon and DEEP an opportunity to plan for how to accommodate that new right to carry, may be especially problematic in the short-term. Since the firearm prohibition was in place for many years, DEEP and EnCon will need to consider making changes to existing rules and regulations that were created on the assumption that firearms were prohibited, and will also need to consider implementing additional security rules and regulations to

accommodate the new right to carry. It would take time to formulate and implement such changes, and could not be completed by peak summer months this year when people will be congregating in our parks and forests and the safety concerns around firearms are most acute.

20. Lastly, if the firearm prohibition were removed at this preliminary injunction stage, but then reimposed at a later date—i.e., following a trial on the merits—it would result in enormous confusion among visitors as to the state of the law, and whether firearms are or are not prohibited in State parks and forests.

Pursuant to 28 U.S.C. § 1746, I, Chris Lewis, state under penalty of perjury that the foregoing declaration is true and accurate to the best of my knowledge, information, and belief.

Executed: March 30, 2023

*Chris Lewis*
Chris Lewis