UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ., | : | |
| | : | DKT No.: 3:23-cv-00056-JBA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KATIE DYKES, in her official capacity only, | : | |
| | : | |
| Defendant. | : | APRIL 14, 2023 |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

The Plaintiff, David J. Nastri, respectfully asks the Court to deny the Defendant's (Katie Dykes') motion to dismiss for lack of subject matter jurisdiction. The gravamen of Dykes' motion to dismiss is that Nastri has failed to plausibly allege an imminent and concrete injury-in-fact that is necessary for Article III standing in his challenge to Connecticut's prohibition on the carrying of firearms in Connecticut state parks and forests.

Her argument, however, sorely misses the mark, invites the Court to construe Nastri's allegations in the light most unfavorable to him, and asks the Court to impose a heightened pleading standard on him under the auspices of standing doctrine. Nastri's verified amended complaint (Dkt. 13) alleges more than sufficient facts to establish his standing. Thus, the Court should reject Dykes' invitations and deny her motion to dismiss.

**ORAL ARGUMENT NOT REQUESTED**

**RELEVANT FACTS**

For the 139 state parks and forests that the state of Connecticut maintains through the Connecticut Department of Energy and Environmental Protection (DEEP),[1] it prohibits members of the public from carrying firearms, archery equipment, or other weapons in state parks and forests unless the DEEP specifically authorizes their carrying. Dkt. 13, ¶¶ 6, 13; *see also* Conn. Agencies Regs. § 23-4-1(c). Violation of this law is an infraction under Connecticut law and is punishable by a $35 fine, temporary eviction from state parks and forests, and a ban from entering state parks or forests that could be as much as a year. Dkt. 13, ¶¶ 13-16.

Connecticut categorically permits individuals to carry firearms (including .22 caliber rimfire handguns), archery equipment, and other weaponry into certain state parks and forests within certain specified seasons to hunt. *Id*. at ¶ 17. It, however, has established no such categorical permission for individuals who possess valid Connecticut pistol permits to carry handguns for self-defense while using state parks or forests. *Id*. at ¶ 18.

David Nastri is a Connecticut citizen, a combat veteran, a well-respected financial advisor, an attorney, a kidney donor, and a generally active member of his community. *Id*. at ¶ 25. He deployed to Afghanistan in support of Operation Enduring Freedom as a Staff Sergeant in the 1st Battalion, 102nd Infantry regiment of the Connecticut Army National Guard. *Id*. at ¶ 27. His awards include the Afghanistan Campaign Medal with a Campaign Star, the Army Good Conduct Medal, and the Louisiana Emergency Service Medal. *Id*. at ¶ 27. He received an honorable discharge in March 2021. Nastri has also held a Connecticut pistol permit in good standing for approximately 30 years. *Id*. at ¶ 32.

---

[1] Defendant Dykes is the Commissioner of the Connecticut Department of Energy and Environmental Protection and is sued in her official capacity under the *Ex Parte Young* doctrine.

Nastri uses Connecticut state parks and forests "on a regular basis throughout the year – most often during the summer." *Id*. at ¶ 33. He specifically alleged that he enjoys hiking with his girlfriend at Sleeping Giant State Park in Hamden, Connecticut and Naugatuck State forest when their schedules permit. *Id*. at ¶ 33. His intention is to continue to make use of Connecticut state parks and forests in the immediate and foreseeable future for recreational purposes as has been his custom for many years. *Id*. at ¶ 35. Indeed, after filing this action on January 14, 2023, he used Sleeping Giant State Park for a hiking excursion by himself that very same day. *Id*. at ¶ 35. The next day, January 15, 2023, he returned to Sleeping Giant State Park for another hike with his girlfriend. *Id*. at ¶ 35.

Another of Nastri's customs is to actively carry his handgun almost every time he leaves his home and almost every place that he goes, and he abides by the laws and rules that govern where he may carry it. *Id*. at ¶ 36. When he must go to a place where the law does not permit him to carry a firearm such as the courthouse that the Court itself sits in, Nastri secures his handgun in a locked safe that he has bolted to the floor of his car. *Id*. at ¶ 36.

In keeping with his custom, Nastri wishes to carry a handgun for the purpose of self-defense in Connecticut state parks and forests like he does every other place that he goes every day. *Id*. at ¶ 37. Conn. Agencies Regs. § 23-4-1(c) bars him from doing so.

## **LEGAL STANDARD**

A challenge to a plaintiff's standing is a challenge to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). "When a motion under Rule 12(b)(1) is based solely on the complaint

and the attached exhibits, the plaintiff bears no evidentiary burden, and the district court must evaluate whether those documents allege facts that plausibly suggest that the Plaintiff has standing to sue." *Id*. The general rule of pleading construction applies on a such a motion to dismiss: "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

The "irreducible constitutional minimum" of standing consists of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. Since Defendant Dykes appears to only challenge Nastri's standing on the first element, Nastri will focus his attention to that issue.

To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The analysis in the case before the Court has three components from this standard as shaped by Defendant Dykes' challenge: particularity, concreteness, and imminence.

First, a particularized injury is one that affects "the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, n.1; *see also Valley Forge Christian College v. American United For Separation Of Church And State*, 454 U.S. 464, 472 (1982) (holding

that standing requires that the plaintiff "personally has suffered some actual or threatened injury").

Second, a "concrete" injury is a "de facto" injury; "that is, it must actually exist." *Spokeo*, 578 U.S. at 340. In the pre-enforcement context, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal citations and quotation marks omitted). Thus, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id*. at 158. Rather, "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [law], and there exists a credible threat of prosecution thereunder." *Id*. at 159 (internal quotation marks and citations omitted).

Third, "imminence is concededly a somewhat elastic concept," but the Supreme Court has established that the "threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citations omitted) (emphasis in original). This requirement largely aligns with the "concreteness" requirement of a "credible threat of prosecution." *See Susan B. Anthony List*, 573 U.S. at 159 ("[W]e have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent").

**ARGUMENT**

Defendant Dykes merges particularity, concreteness, and imminence into a single analysis, and her reading of Nastri's verified amended complaint is abridged and draws substantial inferences in her favor rather than his as the law requires. The Court should not merge its analysis, and the law requires it to draw all reasonable inferences in Nastri's favor. A detailed analysis, the allegations that Nastri states in his verified amended complaint, and the inferences that can reasonably be drawn from them show that Nastri has plausibly alleged standing.

I. **Nastri Alleges A Particularized Injury.**

There is no question that Nastri has alleged a constitutional injury that affects him in a personal and individualized way. To the extent that Defendant Dykes appears to dispute this element of the analysis, she does so in the sense of claiming that Nastri has not alleged a concrete injury. *See* Dkt. 22-1, pp. 5-8.

The factual analysis on this element is simple. Nastri holds a Connecticut pistol permit and has held it for approximately 30 years. Dkt. 13, ¶ 32. He has an active custom of carrying his handgun almost every time he leaves his home and almost every place where he goes. *Id*. at 36. He uses Connecticut state parks and forests on a regular basis throughout the year, and he wants to carry a handgun for the purpose of self-defense like he does every other place where he may lawfully carry a firearm in public. *Id*. at ¶ 33, 37. Conn. Agencies Regs. 23-4-1(c) prohibits Nastri from carrying his handgun for the purpose of self-defense within the confines of a Connecticut state park or forest. *Id*. at ¶ 13. If he violates this law, he faces a $35 fine, temporary eviction from state parks and

forests, and a ban from entering state parks or forests that could be as much as a year.[2] *Id*. at ¶¶ 13-16.

This situation is the essence of a particularized injury. Nastri wishes and intends to engage in a customary course of conduct, and the law prohibits him from doing so. If he violates the law, he will face punishment. Thus, the Court should find that he has plausibly alleged a particularized injury.

II.     **Nastri Alleges A Concrete And Imminent Injury.**

Defendant Dykes' combines her analysis of imminence and concreteness into a single argument that Nastri's use of Connecticut state parks and forests is too speculative as alleged and that he has not clearly alleged his intention to carry a handgun in state parks and forests. Dkt. 22-1, pp. 5-8. In view of the Supreme Court's own combination of these two prongs of the analysis, Nastri has no quibble with a joint analysis. Dykes' argument, however, stems from a construction of Nastri's complaint that ignores its plain language and goes out of its way to draw inferences against him – two methodological errors that the law does not permit.

Dykes relies heavily on *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), but *Lujan* is inapposite in this case because Nastri has properly pled far more than the *Lujan* plaintiffs did. *Lujan* involved several wildlife organizations' challenge to the U.S. Secretary of the Interior interpretation of the Endangered Species Act of 1973 to confine it to conduct within the United States or on the high seas. *Lujan*, 504 U.S. at 557-58. As one of their

---

[2] These consequences are not the only ones that Nastri could face. He could also face criminal charges, incarceration, and substantial fines for every iteration of Connecticut's criminal trespass laws. *See* Conn. Gen. Stat. § 53a-106 (Criminal Trespass in the 1st Degree); Conn. Gen. Stat. § 53a-108 (Criminal Trespass in the 2nd Degree); Conn. Gen. Stat. § 53a-109 (Criminal Trespass in the 3rd Degree); Conn. Gen. Stat. § 53a-110a (Simple Trespass).

arguments in support of standing, the wildlife organizations supplied evidence from two of its members. *Id*. at 563-64. The first member, Joyce Kelly, stated in an affidavit that she had traveled to Egypt in 1986 to observe "the traditional habitat of the endangered nile crocodile," intended "to do so again," and hoped "to observe the crocodile directly." *Id*. at ¶ 563 (internal quotation marks and citations omitted). Because of her future aspirations, Kelly claimed that she would suffer harm without American participation in protecting the endangered nile crocodiles. *Id*. at ¶ 563. The second member, Amy Skilbred, declared in an affidavit that she had traveled to Sri Lanka in 1981 to observe the habitat of multiple endangered species and hoped to do so again. *Id*. at 563. When asked at her deposition, Skilbred confessed that, although she intended to return to Sri Lanka at some point in the future, she had no current plans to go back because of its ongoing civil war. *Id*. at 563-64. In fact, Skilbred expressly disclaimed an intention to go back within the next year. *Id*. at 564.

The Supreme Court found that these claims of standing as being simply not enough. *Id*. at 564. It characterized their desire to return to Egypt and Sri Lanka as "some day intentions – without any description of concrete plans or indeed even any specification of *when* the some day will be." *Id*. at 564 (internal quotation marks and citations omitted). While the Supreme Court made this finding under the "imminency" prong of the analysis, it functionally characterized Kelly and Skilbred's injuries as abstract and speculative at best *Id*. at 564 (holding that the evidence did not show "how damage to the species will produce "imminent" injury to Mses. Kelly and Skilbred). In clarifying this standard, the Supreme Court reiterated its holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if

unaccompanied by any continuing, present adverse effects." *Id*. at 564 (quoting *City of Los Angles v. Lyons*, 461 U.S. 95, 102 (1983)).

Unlike Kelly and Skilbred, Nastri has alleged a regular use of Connecticut state parks and forests for recreation on a year-round basis. Dkt. 13, ¶ 33. He further alleged that he intends to and will continue to use Connecticut state parks and forests for recreation in "the immediate and foreseeable future." *Id*. at ¶ 34. While Nastri's verified amended complaint does not use the word "regular" in paragraph 34 to describe his intended future use of Connecticut state parks and forests, it is an entirely reasonable inference for the Court to conclude, based on Nastri's past regular usage of Connecticut state parks and forests, that his future use will be regular – an inference supported by Nastri's specific allegation in paragraph 37 that, "while making such regular use of Connecticut state parks and forests…." *Id*. at ¶ 37.

Thus, Nastri's allegations could not be more different than Kelly and Skilbred's. Kelly and Skilbred alleged that they might go back to Egypt and Sri Lanka at some point in the future. Nastri, however, has alleged that he will continue to make regular use of Connecticut state parks and forests in the immediate and foreseeable future on a year-round basis as has been his custom. In other words, Kelly and Skilbred alleged a "maybe," but Nastri has alleged a "definitely" even though he has not alleged specific dates.

Nastri's conduct also proves his contention. On the very day he filed this action – January 14, 2023, he went to Sleeping Giant State Park for a hike by himself. *Id*. at ¶ 35. On January 15, 2023, he went to Sleeping Giant State Park for a hike with his girlfriend. *Id*. at ¶ 35. On both of those visits, he wanted to carry his handgun for self-defense as is his normal custom, but, because he is a law-abiding citizen, Nastri obeyed the law despite

it depriving him of his constitutional rights. *See id.* at ¶ 36 (describing Nastri's normal custom of carrying his handgun almost every time he leave his home and almost every place he goes, but also his obedience to laws and rules on where he may carry it). In other words, Nastri has suffered the very harm that he has alleged that he would after he filed this lawsuit, and he will continue to suffer that harm in his use of state parks and forests in the immediate and foreseeable future.

Context also matters, and the Court is sufficiently experienced in matters of life to apply its common sense in this case just like it would instruct a jury to do. *Lujan*'s plaintiffs claimed injury for safaris that they might take in foreign lands – expeditions that were not part of their normal lives and require substantial planning. Nastri, however, is claiming an injury for visits that he regularly makes to state parks and forests within close proximity to his home and place of work. The close proximity of state parks and forests eliminates the need for Nastri to schedule times to visit them. Instead, he enjoys the luxury of waking up or reaching the end of any given day and deciding to go take a hike in a Connecticut state park or forest, and he has alleged that he does so regularly and will continue to do so – a fact borne out by his activities since he initially filed this action. *Id*. at ¶¶ 33-37. Thus, unlike *Lujan*, Nastri's use of state parks and forests is not speculative or abstract.

Defendant Dykes also argues that Nastri's verified amended complaint is deficient because he has not alleged that he "intends" to carry a handgun into state parks and forests, but merely "seeks" to do so. Dkt. 22-1, p. 7. This argument misses the mark, construes Nastri's complaint in the light most unfavorable to him, and invites the Court impose a "specific words" pleading standard. The Court should reject the invitation

because Nastri has pled sufficient facts to show his intent to carry a handgun for the purpose of self-defense while using Connecticut state parks and forests.

First, Nastri has clearly alleged that he carries his handgun almost every time he leaves his home and almost every place he goes, abiding by the laws and rules that govern where he may carry it. Dkt. 13, pp. ¶ 36. He then alleges that, "[w]hile making such regular use of Connecticut state parks and forests, [he] seeks to carry a handgun for the purpose of self-defense like he does every other place…" that the law permits him too. *Id*. at ¶ 37. These allegations, read together and construed naturally and properly, show that, every time Nastri leaves his house and every place he goes, he intends to carry a handgun for self-defense unless a *constitutionally permissible* law prohibits him from doing so. To read these allegations as being too speculative because Nastri used the word "seeks" instead of "intends" would require linguistical gymnastics.

Second, Nastri has pled other facts that plainly show his intention. He alleges that, prior to filing this lawsuit, he "made inquiries in an effort to determine if he could carry a handgun for the purpose of self-defense while using state parks and forests for lawful recreational purposes." *Id*. at ¶ 19. In particular, he made direct inquiries with Defendant Dykes asking whether Conn. Gen. Agencies Regs. § 23-4-1(c) was a hunting-specific regulation and whether there were other rules that would permit him (a valid Connecticut pistol permit holder) to carry his handgun in state parks and forests. *Id*. at ¶ 19. Thus, while Defendant Dykes did not give Nastri any sort of definite answer, she has been on notice as to his intentions for almost six months,[3] and Nastri has properly pled that intention in his verified amended complaint.

---

[3] Defendant Dykes does not challenge the sufficiency of these allegations in her memorandum of law supporting her motion to dismiss.

Finally, to the extent Defendant Dykes relies on *Antonyuk v. Hochul*, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022), *Antonyuk* does not help her. It is true that the trial court repeatedly found that multiple plaintiffs lacked standing because they failed to state in affidavits in support of their motion for a preliminary injunction that they intended to carry a firearm in a prohibited place in the immediate future. *See e.g.*, *Antonyuk*, 2022 WL 16744700 at * 11. The trial court, however, did find standing for one plaintiff who swore in his affidavit that he did not know of any pro-freedom rallies currently scheduled in New York, but that he had attended similar rallies in the past and, if there were one held, he "would jump at the opportunity to attend it to express [his] political views, and [he] would do so while carrying [his] firearm…." *Id*. at *35. This plaintiff did not use the word "intend," nor did he specify a date or imminent intentions of attending such a rally and engaging in an act of civil disobedience by carrying his firearm in violation of the law – the very burden that Defendant Dykes seeks to impose on Nastri here. As discussed above, Nastri has pled far more than the plaintiff that the *Antonyuk* court in that he has pled regular and ongoing use of Connecticut state parks and an intention to carry a handgun for self-defense while using them just like he does every other place that he goes where he is not barred from doing so by a constitutionally permissible law.

Thus, the Court should find that Nastri has alleged an concrete and imminent injury.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Defendant's motion to dismiss.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq. (ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Cameron L. Atkinson /s/