UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ. | : | No. 3:23-cv-00056 (JBA) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| KATIE DYKES, *in her official capacity*, | : | |
| *Defendant* | : | JUNE 7, 2023 |

**DEFENDANT'S SUPPLEMENTAL BRIEF**

Per the Court's Order (ECF No. 41), Defendant submits this supplemental brief in response to *Koons v. Platkin*, 2023 WL 3478604, 2023 U.S. Dist. Lexis 88253 (D.N.J. May 16, 2023).

**I.    *Koons* applied a flawed analysis in concluding that the plaintiffs had standing**

In *Koons*, the court concluded that the plaintiffs had standing to bring a pre-enforcement challenge to statutory provisions prohibiting individuals from carrying firearms in various locations deemed "sensitive places" under New Jersey law, which included places like public parks.  *See Koons* at *130-55.  *Koons* erred in at least two ways.  **First**, in analyzing the "injury in fact" component of Article III standing, the Court heavily based its assessment of whether the plaintiffs' injuries were "sufficiently concrete and imminent" on the ***likelihood that the plaintiffs would return to the specified locations***.  *See, e.g., id.* at *135-36, 138-39.  The likelihood of returning to specified locations is not a dispositive metric.  Rather, standing in a pre-enforcement challenge generally turns on two factors: (1) a plaintiff's intent to engage in conduct that is allegedly constitutionally protected, but proscribed by law (here that would be Plaintiff-Nastri's intent to bring a pistol or handgun into a state park or forest); and (2) a credible threat of prosecution.  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).  Plaintiff here fails both.  He repeatedly testified that he is law-abiding, will not bring a firearm into a state park or forest, and has never been threatened with enforcement of § 23-4-1(c).  *See, e.g.,* ECF No. 33 at 2-7; *cf. Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385-87 (2d Cir. 2015) (concluding

plaintiffs had standing because *they had faced criminal charges in the past* and refrained from engaging in such conduct for fear of prosecution).

**_Second_**, *Koons*' holding necessarily (albeit implicitly) hinged on a theory that standing could be based, in part, on the challenged laws' chilling effects on the plaintiffs' exercise of their Second Amendment rights—i.e., the *existence* of the New Jersey laws *deterred* the plaintiffs from bringing their firearms to locations where they previously had.  *See, e.g.*, *Koons* at *30-31.  Although the "chilling effects" doctrine can establish standing in the First Amendment context, it does not apply to Second Amendment claims.  *See, e.g.*, *Robinson v. Sessions*, 721 Fed. Appx. 20, 23 n.2 (2d Cir.) (summary order), *cert. denied*, 138 S. Ct. 2584 (2018); *Zentmyer v. United States*, 2022 WL 959806, 2022 U.S. Dist. LEXIS 59235, at *9 (S.D. Cal. Mar. 30, 2022); *Ollie v. University of Connecticut*, 364 F. Supp. 3d 143, 150-51 (D. Conn. 2019); *Panzella v. County of Nassau*, 2015 WL 5607750, 2015 U.S. Dist. Lexis 133475, at *30-31 (E.D.N.Y. Aug. 26, 2015), *aff'd*, 863 F.3d 210 (2d Cir. 2017).  *Koons*' reliance on this theory of standing is therefore flawed and should not be followed.

## II.     *Koons*' "sensitive places" analysis is flawed

In *Koons*, the court concluded that a "sensitive places" inquiry implicates step two under *Bruen*. *See, e.g.*, *Koons*, at *172. The court also noted that the "common thread" making locations "sensitive" was that "historically *the government provided security at them*, and so the need for armed self-defense was reduced." *Id.* at *241 (emphasis added); *see, e.g., id.* at *270-71, 278-29.  The court erred in at least two ways.  **_First_**, courts have not applied a one-size-fits-all approach in determining whether a location is a sensitive place—i.e., asking whether the government historically provided security at the subject location; rather, courts have applied a multi-factor test.  *See* ECF No. 23 at 31-32. **_Second_**, *Koons*' conclusion that a location is a sensitive place *because of* government-provided security is contrary to caselaw and history, and fails to account for the fact that "paradigmatic" sensitive places—schools and many government buildings—"are open to the public, without any form

of special security or screening." *United States v. Class*, 930 F.3d 460, 464-65 (D.C. Cir. 2019); *see also* Gryting & Frassetto, NYSRPA v. Bruen and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach, 63 B.C. L. Rev. E. Supp. I-60 (2022). *Koons*' conception of sensitive places is therefore untenable, and this Court should not adopt it.

### III. *Koons'* historical analysis (prong two of *Bruen*) is distinguishable and flawed

*Koons* concluded that the State failed to show that its parks restriction was consistent with the nation's history of firearm restrictions. *Koons* at *234-57. Because the historical record in this case is much different, that conclusion is inapposite. *See Bruen*, 142 S. Ct. 2111 at 2130 n.6.

*First*, Defendant introduced more than 60 historical laws restricting firearms in parks, while defendants in *Koons* introduced 34. *Koons* at *249 n.64. Defendant also submitted laws restricting arms in situations like hunting, public/social gatherings,[1] educational settings, and where carrying could cause alarm. Those laws (unaddressed in *Koons*) are relevantly similar to § 23-4-1(c) and provide additional bases for upholding the regulation. *See* ECF No. 23 at 41-45.

*Second*, *Koons* assumed that modern parks were analogous to founding-era locations like commons, public squares, and gardens, and concluded that the absence of evidence of arms restrictions in those locations was strong evidence that modern park restrictions were unconstitutional. *Koons* at *250-53. Unlike *Koons*, Plaintiff did not introduce evidence on these issues; as such, this Court should not consider any such argument. At any rate, our record disproves the court's assumption because the modern parks that inspired Connecticut's system emerged in the 1850s and were unlike anything that had preceded them, including the founding-era locations the court relied upon in *Koons*—in other words, they were an "unprecedented societal concern[]." *Bruen*, 142 S. Ct. at 2132; *see* ECF No. 23

---

[1] Notably, *Frey v. Nigrelli*, 2023 WL 2473375, 2023 U.S. Dist. LEXIS 42067, at *50 (S.D.N.Y. March 13, 2023), recognized that these laws reflected a "historical tradition of banning firearms in locations where large groups of people are congregated for commercial, social, and cultural activities."

at 4-6, 40-41.  "The Boston [C]ommon[] and other similar urban spaces during the Founding era shared little with modern parks," and were used primarily for agricultural purposes such as grazing livestock. *Cornell Dec.* ¶ 30-31; *Glaser Dec.* ¶ 16; *see also* Shoked, *Property Law's Search for A Public*, 97 Wash. U. L. Rev. 1517, 1556-57 (2020).  And even if founding-era spaces permitted some public recreation or contained scenic displays, that does not make them comparable to modern parks, which were imbued by new romantic ideals of improving society, had uniquely strict rules about decorum and conduct, and triggered what was nothing less than a movement.  *See Young Dec.* ¶¶ 10, 14-19.  Since there was no founding-era analogue to the modern park, the absence of restrictions in founding-era locations is not evidence of unconstitutionality.[2]

**_Third_**, *Koons* distinguished historical parks restrictions because they were enacted to prevent hunting, whereas New Jersey's law was enacted to protect safety.  *Koons* at *255-56.  That distinction has no application here because Connecticut's motivation for restricting firearms in parks was partially intended to address unlawful hunting.  *See Glaser Dec.* ¶ 15; *Tyler Dec.* ¶ 89(c); *Lewis Dec.* ¶ 16(b).

**_Fourth_**, *Koons* stated that the mid-to-late 19th century laws were not representative of the nation because they governed less than 10% of the nation's population.  *Koons* at *256-57.  The court's reliance on population percentage is flawed.  *Bruen* only looked to total population to provide an ***additional reason*** why certain territorial restrictions were "exceptional" and entitled to little weight. 142 S. Ct. at 2154.  It did not suggest that a population threshold is a prerequisite, nor did it suggest that 10% would be insufficient (*Bruen* addressed a total population of less than 1%).  Population is an especially poor metric when it comes to modern parks because they did not emerge until 1858, and

---

[2]*Koons* discounted late-19th and 20th century restrictions as too late.  *Koons* at *255-56.  The court erred because *Bruen* emphasized that reliance on later laws is improper only when they are "contradict[ed] [by] earlier evidence."  *Id.* at 2154 and n.28; *id.* at 2155.  Although *Koons* apparently believed that the later restrictions were contradicted by earlier evidence (i.e., founding-era spaces where arms were not restricted), that was only because the court mistakenly believed that those spaces were comparable to modern parks.  As explained above, our record disproves that assumption.

4

incrementally increased in number over time. So the total population subject to parks restrictions does not show how well-established the restriction was, but simply how many parks existed at that particular time. There was no need to restrict guns in a park if there were no parks in that location.

IV. ***Koons*' balance of the equities analysis is distinguishable**

*Koons*' balance of the relative harms to the plaintiffs and the State is distinguishable. ***First*,** the harm to plaintiffs in *Koons* was more substantial due to the expansive nature of the prohibitions. *See Koons* at *8, 10-11, 318-19. Here, § 23-4-1(c) only prohibits carrying in State parks and forests—discrete locations that Plaintiff goes to by choice. Such a restriction imposes a negligible burden (if any) on the right to carry. *Class*, 930 F.3d at 465; *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1326 (11th Cir. 2015) ("*GeorgiaCarry.Org II*"). Moreover, denying Plaintiffs' motion for preliminary injunction at this stage—even if he were to prevail at trial—imposes only a minor, "temporary setback" on his Second Amendment rights. See *GeorgiaCarry.Org II*, 38 F. Supp. 3d 1365, 1379 (N.D. Ga. 2014), *aff'd* 788 F.3d 1318 (11th Cir. 2015).

***Second*,** the record in this case provides a more extensive accounting of the harms to the State. In particular, it shows how an injunction may require DEEP to make other regulatory changes to accommodate the new right to carry, such as changes to alcohol and safe storage, and how it would impose a substantial burden on the already-understaffed EnCon. ECF No. 23 at 50-53; *see also GeorgiaCarry.Org II*, 38 F. Supp. 3d at 1379 (equities favored government where injunction would require government to alter other regulations and impact staffing issues). The injunction would also cause parents to remove their children from ongoing programs, deter schools from using them, and require the State to violate deed restrictions, thereby subjecting it to potential *cy pres* litigation on a massive scale. The types of extensive changes to long standing policies at issue in this case simply were not implicated in the context of New Jersey's newly enacted legislation. Put simply, the record shows that the equities swing markedly against an injunction.

Respectfully submitted,

DEFENDANT-COMMISSIONER
KATIE DYKES

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Timothy J. Holzman*
Timothy J. Holzman (ct30420)
Blake T. Sullivan (ct30289)
Thadius L. Bochain (ct31367)
Assistant Attorneys General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
860-808-5347 (fax)
Timothy.Holzman@ct.gov
Blake.Sullivan@ct.gov
Thadius.Bochain@ct.gov
Attorneys for the Commissioner

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023 a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Timothy Holzman*
Assistant Attorney General