UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ., | : | |
| | : | DKT No.: 3:23-cv-00056-JBA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KATIE DYKES, in her official capacity only, | : | |
| | : | |
| Defendant. | : | JUNE 14, 2023 |

### PLAINTIFF'S SUPPLEMENTAL BRIEF

Per the Court's order at Dkt. 41, the Plaintiff, David Nastri, respectfully submits this supplemental brief addressing *Koons v. Platkin*, 2023 WL 3478604 (D.N.J. May 16, 2023) – a persuasive authority from the United States District Court for the District of New Jersey.

**I.   *Koons* Applied Common Sense To Conclude That The Plaintiffs Had Standing In Their Challenge To New Jersey's "Sensitive Places" Law.**

Defendant Dykes argues that *Koons* erred in two ways by basing its "concrete and imminent injury" determination first on the likelihood that the plaintiffs would return to specified locations and then on the plaintiffs' claim that New Jersey deterred them from bringing their firearms locations that they had previously done. Dkt. 42, pp. 1-2. Dykes' interpretation of *Koons*, however, ignores the common sense running through its decision.

First, *Koons* imported reality into its decision: "[P]eople's lives do not necessarily lay out into a scheduling book that run[s] six months or a year… into the future…." *Koons*, 2023 WL 3478604, at *43. In particular, *Koons* applied this commonsense reasoning to places where its plaintiffs "visited as part their ordinary, daily routines" and found that they had standing for their challenge to New Jersey's prohibition against firearms in those

1

places. *Id*. at *43. Nastri has supplied extensive evidence to the Court through his trial testimony that using Connecticut state parks and forests are part of his daily and weekly routines and, while he does not schedule his visits like a doctor's appointment, he does use them with enough regularity to render his use certain. The Court should follow *Koons*'s lead and hold that this testimony is sufficient to establish a concrete injury for Nastri.

Second, Dykes characterizes *Koons* as issuing a decision grounded in the "chilling" doctrine typically reserved for First Amendment cases. Nastri will not repeat his arguments here that the "chilling" doctrine should apply in Second Amendment cases, but he does submit to the Court that both the New Jersey law and Conn. Agencies Regs. § 23-4-1(c) are not mere chilling regulations. Both laws outright prohibit the possession of firearms in certain places that New Jersey and Connecticut deem sensitive on the pain of punishment. *Id*. at *45. In other words, both laws do not create uncertainty. They clearly proscribe the exact conduct that Nastri and the *Koons* plaintiffs would engage in if the laws did not exist.

*Koons*' holding that the plaintiffs' sworn statements that they would engage in the proscribed conduct if they would not run the risk of punishment is consistent with the Second Circuit's decision in *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385-87 (2d Cir. 2015). *See Koons*, 2023 WL 2478604 at *45. Nastri's testimony that he does not intend to carry a firearm into Connecticut state parks and forests while he may punished for breaking the law, but that he would if he would not run the risk does not deprive him of standing. It enhances his standing, and the Court should make the same finding here.

## II. *Koons*' Second Amendment Analysis Is On Point And Virtually Indistinguishable.

Dykes attempts to distinguish *Koons* from this case with respect to the Second Amendment merits for several reasons. Nastri addresses each in turn.

First, Dykes argues that she has introduced more laws that are relevantly similar than the *Koons* Defendants did. Dkt. 42, p. 3. Quantity is no substitute for quality under the *Bruen* analysis, and Nastri has already addressed why Dykes' evidentiary record falls short.

Second, Dykes argues that *Koons* improperly assumed that Founding Era town commons, greens and gardens were similar to modern parks and that its conclusion regarding the absence of firearms regulations in those places as being dispositive was erroneous. *Id*. Dykes also claims that Nastri did not introduce evidence on these issues. *Id*. Nastri has several rejoinders.

If Dykes is correct that Founding Era town commons, greens, and gardens are not similar to modern parks, then absolutely no historical analogues exist for modern parks, and the absence of any similar places from the Founding Era with corresponding regulations completely barring firearms possession in them is dispositive in Nastri's favor. Simply put, there would be no historical support for the prohibition that Conn. Agencies Regs. § 23-4-1(c) establishes.

Dykes, however, is not correct. Nastri did introduce evidence regarding the similarities between Founding Era town commons, greens, and gardens and modern parks. Ironically, he did so at trial through her own expert, Professor Saul Cornell. Professor Cornell testified to the commonality of urban spaces such as town greens in New England during the Founding Era. *See* **Exhibit A – Excerpted Testimony Of Saul**

3

**Cornell, pp. 57-58.** He also testified that people did use such spaces – e.g., the Boston Commons – for recreational purposes. *Id*. at pp. 49-50, 58.

*Koons* properly draws the same conclusion that Nastri submitted through Cornell's testimony, but in more detail than Nastri could discover. Nastri accepted *Bruen*'s invitation to demonstrate the absence of well-established and historical analogues, and he did so at trial. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2131 (2022) (holding that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment"). While *Koons* did provide more specific examples, it still accepted the basic premise that Nastri established through Professor Cornell's testimony: "today's modern parks evolved from the colonial greens, public commons, squares, and other areas the colonists set aside for common use, recreation, or public gatherings." *Koons*, 2023 WL 3478604 at *83.

*Koons*' examples included the following: the extensive recreational use of the Boston Common – *id.* at *83; New York's 1733 establishment of the Bowling Green Park for recreational purposes – *id*. at *83; New York City's Battery Park's dedication to recreation as early as 1802 – *id* at *83; and Philadelphia's use of commercial pleasure gardens for recreation – *id*. at *83.

The common theme running through each of these examples was the complete absence of any laws prohibiting firearms in these areas. *Id*. at *83 ("Despite the existence of such common lands since the colonial period, the State has failed to come forward with any laws from the 18th century that prohibited firearms in areas that today would be considered parks"). Nastri has made a similar showing here although not with as many

4

examples. Thus, the Court should follow *Koons*' well-reasoned opinion and enjoin Conn. Agencies Regs. § 23-4-1(c) as unconstitutional.

While Dykes makes arguments as to *Koons* alleged errors regarding hunting restrictions and whether mid-to-late 19th century laws were representative of a tradition of regulating firearms in state parks and forests, Nastri has already addressed those in his initial papers. He will rest on those arguments.

Finally, a brief word is in order about *Koons*' rejection of the state property owner theory as a justification for the categorical prohibition of firearms on all government property. As *Koons* aptly noted, the Bill of Rights applies on government property too. *Koons*, 2023 WL 3478604 at *51. In particular, *Koons* relied on well-established First and Fourth Amendment precedents to show that, even on government property, the government must still respect the protections afforded by the Bill of Rights. *Id*. at *51-52 (compiling cases). Thus, *Koons* found that government prohibitions of firearm possession on government-owned land is still subject to a "sensitive places" analysis. *Id*. at *53 (citing *United States v. Class*, 930 F.3d 460 (D.C. Cir. 2019)). The Court should employ the same approach here despite Dykes' state property owner argument.

## **CONCLUSION**

Nastri does not address Dykes' invocation of *Koons*' balancing of the equities. The Court is well-equipped to make its determination on that front, and Nastri rests on his briefing of that issue in his original moving papers.

For the foregoing reasons and those stated in his original moving papers, the Plaintiff, David Nastri, respectfully requests that the Court grant his motion for a preliminary injunction as to Conn. Agencies. § 23-4-1(c).

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Cameron L. Atkinson /s/