UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID NASTRI,<br><br>*Plaintiff,*<br><br>v.<br><br>KATIE DYKES, Commissioner for the Department of Energy and Environmental Preservation,<br><br>*Defendant.* | Civil No. 3:23-cv-0056 (JBA)<br><br>July 12, 2023 |

**RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S PRELIMINARY INJUNCTION**

Plaintiff David Nastri filed an amended complaint on January 28, 2023, alleging pursuant to 42 U.S.C. § 1983 that Conn. Agencies Reg. § 23-4-1(c) violates his Second Amendment rights because it prevents him from carrying a pistol or revolver for the purpose of self-defense in case of confrontation in Connecticut state parks and forests, and because the regulation has no "historical analogue" that would justify it under the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (Jun. 23, 2022). (Am. Compl. [Doc. # 13] ¶¶ 50-64.) Plaintiff seeks a permanent injunction barring Defendant Katie Dykes, Commissioner of the Connecticut Department of Energy and Environmental Protection ("DEEP") from enforcing the regulation, as well as costs and attorneys' fees. However, Plaintiff has also filed a preliminary injunction motion seeking to bar Defendant from enforcing the regulations "until such time as the Court makes a final determination on the merits in this matter" or in the alternative, for the Court to "consolidate the preliminary injunction hearing with the trial on the merits in this matter pursuant to Fed. R. Civ. P. 65." (Pl.'s Prelim. Inj. Mot. ("Pl.'s PI") [Doc. # 14].)

Defendant's opposition argues among other things that Plaintiff cannot show a likelihood of succeeding on the merits because (1) he brings a facial rather than as-applied challenge, and cannot show that the regulation is invalid in all its applications; (2) he has not shown that the plain text of the Second Amendment covers his proposed course of conduct; (3) the regulation is consistent with historical traditions of firearm regulation and has historical analogues. (Def.'s Opp'n to Pl.'s PI [Doc. # 23].) Additionally, Defendant has moved to dismiss the Amended Complaint for lack of standing, arguing that Plaintiff lacks a sufficiently concrete intent to engage in proscribed conduct and fails to show any imminent and credible threat of prosecution (Def.'s Mot. to Dismiss ("Def.'s MTD") [Doc. # 20]); Plaintiff maintains that he plausibly alleges that he has and will continue to visit Connecticut state parks and forests, and that he "seeks" to do so while carrying a firearm, which is sufficient to confer standing. (Pl.'s Opp'n to MTD [Doc. # 27].)

## I. Background

### A. Conn. Agencies Regs. § 23-4-1(c)

DEEP was established by Conn. Gen. Stat. § 22a-2d, which defines its goals as "(A) Conserving, improving and protecting the natural resources and environment of the state, and (B) preserving the natural environment while fostering sustainable development." Conn. Gen. Stat. § 22a-5(3) specifically requires the Commissioner to "provide for the protection, enhancement and management of the public forests, parks, open spaces and natural area preserves." Conn. Agencies Regs. § 23-4-1(c), issued pursuant to DEEP's regulatory authority under Conn. Gen. Stat. § 23-4 regulating "hunting/weapons", states that "[h]unting or carrying of firearms, archery equipment or other weapons, including but not limited to air rifles and slingshots, is not permitted in any state park or forest except as authorized by the Department of Energy and Environmental Protection. All carrying or use of weapons is subject to applicable provisions of the Connecticut General Statutes and regulations adopted

thereunder." Penalties for violating the provision include a fine of thirty-five dollars, eviction for a period of twenty-four hours or, if convicted of a violation under the provisions of Conn. Gen. Stat. § 51-164n, a violator may be prohibited from entering any state park by the Commissioner for up to a year. Conn. Agencies Regs. § 23-4-5; Conn. Gen. Stat. § 23-4.

### B.     Plaintiff David Nastri

Plaintiff is a Connecticut Army National Guard veteran who received "comprehensive training" on the safe and effective use of firearms. (Am. Compl. ¶¶ 25, 28.) He has passed "rigorous background checks" in order to obtain his FINRA licenses as a financial advisor, holds a clean disciplinary record as a financial advisor, and has no record of disciplinary history since being licensed to practice law in Connecticut in November 2018. (*Id.* ¶ 29-30.) Plaintiff has a pistol permit that he estimates was issued 30 years ago (his current permit does not reflect its initial issue date), completed the associated safety training and has "held it in good standing since receiving it." (*Id.* ¶ 32.)

Plaintiff's complaint alleges that he "intends to and will continue to make use of Connecticut state parks and forests in the immediate and foreseeable future for the purpose of recreation such as hiking," and that his prospective use of Connecticut state parks and forests is "not speculative" because he has gone to Sleeping Giant State Park for a hike twice since the filing of the original complaint in January 2023; once by himself, and once with his girlfriend. (*Id.* ¶ 34-35.) At the preliminary injunction hearing, Plaintiff testified that he uses Sleeping Giant State Park once a month during the year to hike, Naugatuck State Forest once or twice a year to hike, and Farmington River Canal Trail to walk or run four or five times a week. (Prelim. Inj. Hrg. Day 1 Tr., May 9, 2023 [Doc. # 37] at 148-149.) He has been using Sleeping Giant State Park since he was 15 years old, Naugatuck State Forest for 40 years, and Farmington River Canal Trail for 10 years. (*Id.* at 149.) He does not have specific plans to visit Naugatuck State Forest or Sleeping Giant State Park in the future, but he does not

typically put a date in his calendar when he is planning to go to a state park or forest because his visits are "impromptu" and the state parks he typically visits are close to his home. (*Id.* at 203, 172-174.)

Plaintiff "actively carries his handgun almost every time he leaves his home and almost every place that he goes, but he abides by the laws and rules that govern where he may carry it," and so "[w]hen he must go to a place where the law does not permit him to carry a firearm," Plaintiff "secures his firearm in a locked safe that he has bolted to the floor of his motor vehicle." (Am. Compl. ¶¶ 34-36.) Prior to learning of the regulation, Plaintiff carried his handgun into Sleeping Giant State Park and Naugatuck State Forest "[e]very time [he] went there," and had been carrying his handgun on the Farmington River Canal Trail about three times a week, all for the purpose of self-defense. (Prelim. Inj. Hrg. Day 1 Tr. at 150-151.) Plaintiff became aware of the challenged regulation in the summer of 2022 when he got his hunting license and read through the DEEP regulations related to firearms in state parks, including the prohibition on carrying firearms in state parks and forests for purposes other than hunting in designated areas. (*Id.* at 145, 147.)

Plaintiff is "aware" of a procedure to "request permission to carry firearms into a state park or forest," but believes that the context is "normally not self-defense," and the only instance he was aware of where an exception was made was for a Civil War reenactment. (*Id.* at 171.) He has seen the form that DEEP provides for individuals to request permission to bring a firearm into the park but does not know where he could find one for the purposes of submitting it and has never submitted the form himself. (*Id.* at 171-172.) In November of 2022, Plaintiff stopped carrying his firearm in state parks and forests. (Pl.'s Dep. Tr. [Doc. # 33-1], Exh. A, to Def.'s MTD Reply, at 202:5-10.) Because under Conn. Agencies Regs. § 23-4-1(c), storing his handgun in a locked container in his motor vehicle at a state park or forest parking lot would still be "within the confines of a Connecticut state park or forest and would

be in violation of the law," he also leaves his handgun at home "every time" that he "intends to visit a state park or forest." (Am. Compl. ¶¶ 36, 38.) Plaintiff testified that he was aware the violation could result in a $35 fine or being banned from state parks and forests for between 24 hours to a year. (Prelim. Inj. Hrg. Day 1 Tr. at 163-64.) Plaintiff also testified that it was his understanding that violating the regulation might jeopardize his pistol permit, and that he would have to report the penalties to FINRA as a licensed financial advisor, which in turn would result in the violations being notated on his U4 (permanent record as a financial advisor), and possibly his discharge from his job. (*Id.* at 164-165, 168.)

Plaintiff testified that he has never encountered an Environmental Conservation Police Division ("EnCon") police officer while visiting a state park, and that he not aware of anyone else who has had the regulation enforced against them. Plaintiff also confirmed that the regulation has never been enforced against him, nor has any EnCon officer or other police officer threatened him with enforcement of that regulation. (Prelim. Inj. Hrg. Day 1 Tr. at 200-201.) Plaintiff stated that "until such time that this regulation is overturned," he "will not carry a firearm in a state park or forest" because as a licensed attorney, he "will not willfully disobey a law[.]" (*Id.* at 169.) Although he currently abides by Conn. Agencies Regs. § 23-4-1(c) and states no intention to discontinue doing so, Plaintiff alleges that he "seeks to carry a handgun for the purpose of self-defense" while "making such regular use of Connecticut state parks and forests." (Am. Compl. ¶ 38.)

## II. Procedural History

Plaintiff filed an emergency motion for preliminary injunction and temporary restraining order on January 17, 2023; the Court denied the TRO at the telephonic status conference held on January 27, 2023 and directed the Plaintiff to file an amended complaint responsive to Defendant's forthcoming motion to dismiss, as well as to file an amended motion for preliminary injunction incorporating any relevant information new to the

amended complaint. (*See* Doc. # 12.) An amended motion for preliminary injunction was filed on January 28, 2023, and Defendant filed her motion to dismiss on March 30, 2023. The Court held an evidentiary hearing and oral argument on May 9, 2023, and May 10, 2023, providing both sides the opportunity to submit evidence relevant to both standing and the substantive issues raised by the motion for preliminary injunction. The parties were granted permission to submit supplemental briefing on May 31, 2023, and briefing concluded on June 14, 2023.

## III.     Legal Standard

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction will be granted "when the court lacks the statutory or constitutional power to adjudicate the case." *Soundkeeper, Inc. v. A & B Auto Salvage, Inc.*, 19 F. Supp. 3d 426, 428 (D. Conn. 2014).[1] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," which includes the burden to prove his own standing. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016). When "the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden," *id.*, but the complaint must "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue" and courts "need not credit a complaint's conclusory statements without reference to its factual context." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145-46 (2d Cir. 2011). However, "a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering

---

[1] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

evidence beyond the Pleading," at which time a plaintiff is required to "come forward with evidence of [his] own to controvert that presented by the defendant" if defendant's evidence reveals factual disputes. *Carter,* 822 F.3d at 57. "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

Because Defendant submitted Plaintiff's deposition transcript in her reply to Plaintiff's opposition to the motion to dismiss, the Court will evaluate the motion to dismiss under 12(b)(1) as a fact-based motion and consider all evidence relevant to standing that was submitted as part of the preliminary injunction proceeding in resolving factual questions and determining whether Plaintiff has established his standing.

## IV. Discussion

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014)). An "injury in fact" must be "concrete, particularized, and actual or imminent," *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016), rather than "conjectural" or "hypothetical." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).

Although Conn. Agencies Reg. § 23-4-1(c) has not been enforced against Plaintiff, he may establish that an injury in fact is "imminent" such that he has standing to bring a "pre-enforcement" challenge to the Challenged Regulation "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Driehaus*, 573 U.S. at 159.

"Courts apply a three-prong test to assess the existence of a cognizable injury in fact in the context of pre-enforcement challenges," requiring a plaintiff to show "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'proscribed by' the challenged law; and (3) that 'there exists a credible threat of prosecution thereunder.'" *Vitagliano v. Cnty. of Westchester*, No. 23-30, 2023 WL 4095164, at *5 (2d Cir. June 21, 2023) (quoting *Driehaus*, 573 U.S. at 159.) Plaintiff "need not first expose himself to liability before bringing suit to challenge . . . the constitutionality of a law threatened to be enforced," *Picard*, 42 F.4th at 97, but he must show an "actual and well-founded fear that the law will be enforced against [him]." *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 382 (2d Cir. 2000).

Because neither side disputes that Plaintiff's conduct is proscribed by the Challenged Regulations, the only issues in dispute are whether Plaintiff demonstrates an intent to engage in the proscribed conduct and whether there is a credible threat of prosecution under the challenged law.

### A. Intention to Engage in Proscribed Conduct

Plaintiff's counsel argues that because Plaintiff has a prior history of engaging in the proscribed conduct, ceased that conduct based on a fear of prosecution or legal consequences, and actively maintains a desire to re-engage in that conduct once it becomes legal, he has demonstrated an intent to engage in conduct proscribed by the statute. Defendant argues that Plaintiff must intend to "engage in the prohibited conduct" by bringing his firearm to the park with him *despite* the regulation prohibiting it—in other words, by actually violating the law—and that based on Plaintiff's representations at his April 27, 2023 deposition stressing that "his practice is not to carry a firearm in state parks and forests" and that he intends to continue this practice "while § 23-4-1(c) remains in place," he cannot make that showing. (Def.'s MTD Reply at 4.)

Defendant's position is contrary to both Supreme Court and Second Circuit precedent. In *Steffel v. Thompson*, 415 U.S. 452, 460 (1974), a plaintiff sought to distribute handbills against the war in Vietnam after having been twice warned to stop doing so by the police; although he did not name a date and time certain that he intended to distribute handbills again, the Supreme Court found that he had standing to challenge the law prohibiting him from doing so. More recently, the Supreme Court held in *Holder v. Humanitarian L. Project,* 561 U.S. 1, 15–16 (2010), that plaintiffs had standing when they claimed they "provided support to the [allegedly foreign terrorist groups] before the enactment of § 2339B and that they would provide similar support again if the statute's allegedly unconstitutional bar were lifted" but had not been yet threatened with enforcement against them. Second Circuit cases applying *Driehaus* have resulted in similar outcomes. *See Knife Rights v. Vance,* 802 F.3d 377, 386 (2d Cir. 2015) (finding that the plaintiffs demonstrated an intent to engage in proscribed conduct by asserting that they had "in the past carried, and wish again to carry, common folding knives, but do not do so because they cannot confidently determine which such knives . . . [are] prohibited . . . and they do not wish to risk prosecution" after already being prosecuted once for the same conduct); *Silva v. Farrish*, 47 F.4th 78, 87 (2d Cir. 2022) (finding that plaintiffs had standing even without outlining their plans to engage in proscribed conduct "with specificity" because they had previously fished in a particular area in violation of state fishing regulations, had "already been subjected to enforcement actions" for the conduct, and alleged that they were "deterred and chilled" from doing so again because they feared prosecution).

Most recently, the Second Circuit held in *Vitagliano*, 2023 WL 4095164, at *4, that a plaintiff who had a "desire to engage in sidewalk counseling" outside abortion clinics had standing even though she "had not engaged in sidewalk counseling prior to the Act's passage" or "alleged concrete plans to do so at any point in the future." *Id.* at *5. The Second Circuit

9

explained that "a plaintiff asserting a pre-enforcement challenge need only allege 'an intention to engage in a course of conduct,' which does not necessarily require specification of the date and time she plans to do something of constitutional significance." *Id.* (citing *Picard*, 42 F.4th at 97). Describing "the origin of her desire to become a sidewalk counselor, the steps she took to train and prepare to serve as a sidewalk counselor, the abortion clinic outside which she intends to provide sidewalk counseling, and the approach she plans to take when having sidewalk-counseling conversations," the Second Circuit held, "more than suffice[d]" to demonstrate her intent. *Id.* at *6.[2]

Under this standard, Plaintiff has satisfied the requirement of pleading that he would intend to "engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" if not for the challenged regulation. In his deposition, Plaintiff testified that at one point, it was his practice to carry his firearm in state parks in forests until he became aware that the regulation prohibited his conduct, (Pl.'s Dep. Tr. at 202), and that it would be his practice not to carry his firearm in a state park or forest only "until the end of this case" when he presumes the regulation will be enjoined. (*Id.*) Plaintiff also reached out

---

[2] The Court is aware that some other district courts in this circuit have relied on *Driehaus*, in which the plaintiffs pled with specificity the statements they intended to make in future election cycles that would violate the law, 573 U.S. at 149, to find that a plaintiff must plead exactly how and when he or she intends to engage in proscribed conduct. *See Antonyuk v. Bruen*, No. 1:22-CV-0734 (GTS/CFH), 2022 WL 3999791 at *17 (N.D.N.Y. Aug. 31, 2022) (*Antonyuk* I) (holding that a plaintiff alleging that he "desires," "wants," "wishes" or "would like" to continue to carry a concealed handgun is not enough if he does not indicate an "*intent*" to do so in violation of the statute), *and Frey v. Bruen*, No. 21 CV 05334, 2022 WL 522478 at *5 (S.D.N.Y Feb. 22, 2022) (holding that a signed, sworn declaration that the plaintiffs "intend" to carry their handguns for all lawful purposes was insufficient to show standing when it did not allege "concrete plans to violate the New York Penal laws."). However, *Vitagliano* clarifies that neither prior engagement in the conduct nor enforcement of the statute is required so long as plaintiffs plead with an adequate level of detail their "earnest desire" and the steps they had taken to engage in the proscribed conduct "but-for" the statute, 2023 WL 4095164 at *6. In this Court's view, *Vitagliano* forecloses the interpretation of *Driehaus* advanced in cases like *Antonyuk* and *Frey.*

to an agent of Defendant to inquire whether the challenged regulation prohibited members of the public from carrying licensed pistols or revolvers into state parks, which further suggests that he is actively seeking ways in which to lawfully bring his firearm to currently proscribed locations. (*See* Am. Compl. Exh. M).[3] Under *Vitagliano* and *Knife Rights,* his pleadings and testimony are sufficiently detailed to satisfy this part of the test. *See also Angelo v. D.C.*, No. CV 22-1878 (RDM), 2022 WL 17974434, at *6 (D.D.C. Dec. 28, 2022) (finding that the plaintiffs alleged an intent to engage in proscribed conduct when they alleged that "[b]ut for D.C. law, [they] would carry [their] concealed handgun[s] on Metro trains and buses for self-defense" and that they "do not do so now because [they] fear arrest and prosecution," although ultimately dismissing for a lack of standing based on the absence of a credible threat of prosecution.)[4]

---

[3] Defendant cites in support to *Lujan*, 504 U.S. at 560, in which the Supreme Court held that the plaintiff's visitation to the areas in which endangered animals could be observed in the past and professed intent to return to those places in the future was "simply not enough" because "'some day' intentions—without any description of concrete plans, or indeed even any specification of **when** the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564 (emphasis in original). Based on *Lujan,* Defendant contends that the fact Plaintiff "had visited" state parks and forests in the past "proves nothing," because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects," (Def.'s MTD at 7-8) (quoting Am. Compl. ¶¶ 34-38 and *Lujan,* 504 U.S. at 564.) However, Plaintiff persuasively distinguishes the present case from *Lujan* by pointing out that taking a trip to embark on a safari in Sri Lanka and Egpyt requires a level of planning that made it unlikely any trips were imminent without evidence of definite steps to visit, unlike Plaintiff's ability to visit a state park or forest by walking a few minutes from his house without the need for buying tickets or arranging transportation.

[4] To the extent Defendant is concerned that nothing distinguishes Plaintiff from the average citizen with a "generalized grievance common to any other member of the public who may disagree with the rule but follows it anyway," (Def.'s MTD Reply at 7), the second prong of the *Driehaus* test alleviates these concerns by requiring a showing of the imminent nature of future injury particularized to Plaintiff's circumstances. *See infra* at 16-17.

11

The Court also rejects the notion "that Plaintiff[] must allege the precise date and time on which [he] intend[s] to next visit" a place in which firearms are prohibited if they were "visited as part of their ordinary, daily routines" because "people's lives do not necessarily lay out into a scheduling book that run[s] six months or a year . . . into the future." *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 WL 3478604, at *43 (D.N.J. May 16, 2023); *see also Vitagliano*, 2023 WL 4095164 at *5. Plaintiff alleges that he "intends to and will continue to use" Connecticut state parks and forests "in the immediate and foreseeable future," (Pl.'s MTD Opp'n at 9), and made clear in his testimony at the preliminary injunction hearing that he has regularly visited Sleeping Giant State Park, Naugatuck State Park, and Farmington Canal Trail for some time now, and that he has no plans to stop even if he does not mark the specific dates he intends to go on a calendar.

### B.  Credible Threat of Prosecution

Any specific threats directed at Plaintiff, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016), and "the extent of [] enforcement" of the challenged law, or lack thereof, *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019), are both relevant in evaluating the credibility of any threat of enforcement. While Plaintiff is obviously not at current risk of being prosecuted under the Challenged Regulation because he is not currently violating it, Plaintiff's counsel argued that Plaintiff's email exchange with Deputy DEEP Commissioner Mason Trumble gave him reason to believe the regulation would be enforced against him if he were to violate it. Plaintiff wrote to Defendant in November of 2022 to "obtain clarity on DEEP regulations concerning the carrying/possession of firearms in state parks and forests," explaining that his inquiry was related to "possessing a properly licensed pistol or revolver for the purpose of self-defense in those locations," and that it was his "expectation" that a rule existed that "specifies that a person who is licensed to carry pistols or revolvers in the state of Connecticut is authorized to do so in a state park or forest." (Am. Compl. Exh. M. [Doc. # 13-

12

13] at 3.) Trumble responded by writing "Thanks for reaching out . . . I believe this resource addresses the questions you posed regarding the regulation," and attached a hyperlink directing him to a report by Connecticut Office of Legislative Research's Chief Attorney Janet Kaminski Leduc titled "Carrying Handguns in Connecticut State Parks or Forests" ("Leduc Report") (Am. Compl. Exh. N [Doc. # 13-14].)

The Leduc Report states that a person may legally possess a handgun in a state park or forest "only when carrying the handgun for hunting small game . . . or participating in other authorized activities, such as at a firearms range or during a hunter education class," and only if they have a permit to do so under Conn. Gen. Stat. § 29-28. *Id.* It also includes information on the penalties for illegally carrying weapons in violation of the regulations, DEEP's authority over parts of the Appalachian Trail, and federal law on the carrying of handguns on the Appalachian trail.[5] Perhaps Mr. Trumble's response could have been construed as a threat if, for example, he had specifically pointed out or excerpted the section on potential penalties to Plaintiff, or cautioned him against violating the regulation. However, he did neither; Plaintiff frames his inquiry as a general one, rather than a specific statement of intent on his part to carry firearms in the park, giving Trumble no reason to respond with a threat or warning.

Even absent a particularized threat against Plaintiff, courts are "generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund," *Cayuga Nation*, 824 F.3d at 331, especially if the government entity in question "decline[s] to represent that [government] officials would not enforce the law."

---

[5] In response to this email, Plaintiff asked Mr. Trumble to convey his request to Defendant Dykes to "take immediate steps" to amend the regulation to bring state law into compliance with the Supreme Court's decision in *Bruen*; neither Defendant nor Mr. Trumble responded or took action on his request. (Am. Compl. ¶ 23-24.)

*Vitagliano*, 2023 WL 4095164, at *6. Colonel Lewis, the division director for the Environmental Conservation Police Division, testified on the second day of the preliminary injunction hearing that if EnCon found someone carrying a weapon in the state park, absent extenuating circumstances, they would issue a charge of possession of weapon in a state park under the challenged regulation. However, in *Vitagliano,* it was significant that the plaintiff was seeking to enjoin "a newly enacted law aimed specifically at Westchester County reproductive health care facilities and designed to curb the very conduct in which she intends to engage outside such facilities." 2023 WL 4095164 at *7. In cases where the statute or regulation has not been recently passed, the presumption the government will enforce its own laws "in and of itself, is not sufficient to confer standing, as courts also consider the extent of that enforcement in determining whether a credible threat of prosecution exists." *Adam v. Barr*, 792 F. App'x 20 (2d. Cir. 2019). In *Adam,* because the plaintiff "was unable to marshal examples of enforcement actions that involved" the proscribed conduct, *Vitagliano* at *7, the Second Circuit found that there was no "particularize[d]" threat of enforcement. *Adam,* 792 F. App'x at 23. To the contrary, plaintiff was "simply. . . at risk just like any other person in the country who might violate the [the statute]," and so "the threat of enforcement against him [was] insufficiently imminent to confer Article III standing." *Id.*

The case at hand is more like *Adam* than *Cayuga Nation* and *Vitagliano.* The Challenged Regulation is not "recent"—it has been in place since 1918, and there is no evidence in the record of any instance in which the law has *ever* been enforced. EnCon's Agency Crime Review statistics (Pl.'s Exh. 10), list only 4 "Weapon Law Violations" for 2019; Colonel Lewis explained at the hearing that those violations might encompass improper possession of a firearm, but could also encompass possession without a permit, or being a felon in possession of handguns, as well as offenses involving other dangerous weapons such as gravity knives or brass knuckles. Neither party's witnesses have personal knowledge of

14

the Challenged Regulation being enforced; Plaintiff admitted that he has never heard of this regulation being enforced against *anyone*, and Colonel Lewis testified that he could not recall a single circumstance in which an EnCon ranger or officer had been required to enforce the regulation during his time working with EnCon. As a practical matter, one of the factors affecting the likelihood of enforcement is EnCon's staffing levels. Colonel Lewis testified that EnCon regularly experiences staffing challenges, and that EnCon does not have the capacity to station an officer at every one of Connecticut's state parks and forests at the same time, and Plaintiff testified during his preliminary injunction testimony that he has never encountered an EnCon officer in state parks or forests.

Finally, the case at hand is easily distinguishable from one in which the threat of enforcement is imminent based on the actions and public statements of the government agency charged with enforcing the rule. *Cf. Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 WL 17100631, at *4 (W.D.N.Y. Nov. 22, 2022) (currently on appeal) (finding that public statements from the New York City governor and police department suggesting a "zero tolerance" policy, when considered in conjunction with the recency of the law, showed that plaintiff faced "sufficiently imminent" enforcement).[6] Colonel Lewis testified that EnCon officers go out of their way to take a non-confrontational approach with members of the public whenever possible; officers do not regularly search patrons upon entry for firearms, and unless an EnCon officer has a suspicion that someone was transporting illegal game or fish, or carrying a cooler containing alcohol in an area where alcohol was prohibited, officers do not search patrons upon entry to a park. Plaintiff himself argues that DEEP "does nothing

---

[6] Plaintiff also adds in a footnote that he could be charged with criminal trespass for bringing a firearm to a state park or forest, but once again, the complaint reflects neither a specific threat of enforcement nor even a general policy of the state of Connecticut from which the Court can determine that there is an "imminent" threat these statutes will be enforced against Plaintiff in that particular manner. (Pl.'s Opp'n at 7.)

to ensure that the public complies with the prohibition on firearms possession prior to entering state parks and forests." (Pl.'s PI Mot. at 35.) By his own account, the lack of inspection mechanism undermines the idea that any kind of enforcement might be "sufficiently imminent" against Plaintiff or someone like him who carries a concealed firearm in state parks or forests.

The evidence in the record shows that (1) Plaintiff has never encountered an EnCon officer while in a state park or forest; (2) the chances of encountering an EnCon officer are rare due to staffing challenges; (3) EnCon officers do not randomly search park patrons for firearms; (4) Plaintiff testified no one has noticed him carrying a concealed firearm in the last year, (Pl.'s Dep. Tr. at 142-43); and (5) Plaintiff was never stopped and ticketed during the period he was unknowingly carrying his firearm in state parks and forests in violation of the regulation. On these facts, it becomes clear that Plaintiff's theory of standing is nothing more than the sort of "highly attenuated chain of possibilities" that the Supreme Court has found "does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. While "'[t]he identification of a credible threat sufficient to satisfy the imminence requirement . . . necessarily depends on the particular circumstances at issue," it "will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that prosecution is likely, or even that a prosecution is remotely possible.'" *Picard,* 42 F.4th at 98 (2d Cir. 2022); *see Angelo*, 2022 WL 17974434, at *6 (finding that the threat of enforcement was "speculative" and thus insufficient to confer standing when plaintiffs did not allege prior threats of enforcement against them, and they could not "identify a single person" who had ever been arrested under the challenged law "while not engaged in another crime.") Plaintiff's "imaginary" and "speculative" conjecture is insufficient to show an actual "impending" and "credible" threat of prosecution, and so he lacks standing. *Knife Rights, Inc.*, 802 F.3d at 384.

16

"If a plaintiff fails to establish standing, the court 'need not address the factors to be considered in deciding whether to award a preliminary injunction' and should instead deny the motion and dismiss the case for lack of subject matter jurisdiction." *Do No Harm v. Pfizer Inc.*, No. 1:22-CV-07908 (JLR), 2022 WL 17740157, at *6 (S.D.N.Y. Dec. 16, 2022) (quoting *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 259 (2d Cir. 2015)). When a complaint is "dismissed for lack of Article III standing, the dismissal must be without prejudice." *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 545 (W.D.N.Y. 2018).[7]

## V.     Conclusion

The motion to dismiss is GRANTED, and the case is dismissed without prejudice; because the Plaintiff lacks standing, the motion for preliminary injunction is DENIED for lack of subject matter jurisdiction.

IT IS SO ORDERED.



Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of July, 2023

---

[7] In *Antonyuk I,* the district court chose to address in "judicial dictum" the merits of the preliminary injunction motion "out of an abundance of caution, because at least a conceivable chance exists that Plaintiffs may take an immediate appeal of this Decision and Order to the Second Circuit and be found to, in fact, possess standing, in which case what follows would constitute the Court's holding." *Antonyuk I* at *25. However, because "[b]oth the Supreme Court and Second Circuit have held that a lack of standing deprives the Court of subject-matter jurisdiction," *Antonyuk I* at *23, the Court's view is that it is required to dismiss this case rather than preemptively address the merits.