UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ. | : | No. 3:23-cv-00056 (JBA) |
|    *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| KATIE DYKES, *in her official capacity*, | : | |
|    *Defendant* | : | JULY 31, 2023 |

### **Objection to Plaintiff's Motion to Reconsider**

This Court should deny plaintiff's motion for reconsideration (ECF Nos. 49 & 50) for at least four reasons: First, Plaintiff's motion is procedurally improper as this Court lacks jurisdiction to consider a motion on the merits of the case. Second, Plaintiff has failed to satisfy the standard for reconsideration under Rule 52(b) or Rule 59(e) because the table "purporting to show instances of enforcement of the Challenged Regulation between 2016 and 2022" ("the data table") is new evidence. Third, it is unduly prejudicial to consider the data table now because it was produced subject to objection and its probative value was never tested through examination at trial. Finally, even if the court considers the table, it is cumulative of other evidence of enforcement and otherwise fails to provide sufficient context to change the result for the reasons already explained in the Court's decision.

### I.    **This Court Lacks Jurisdiction to Consider Plaintiff's Motion.**

As a preliminary matter, Plaintiff summarily asserts that this Court has jurisdiction to consider his motion for reconsideration, filed pursuant to Rules 52 and 59(e) of the Federal Rules of Civil Procedure and Local Rule 7(c), notwithstanding the

1

fact that he filed his motion after he appealed this Court's July 12, 2023 order. *See* ECF No. 50 at 2-3; *see also* ECF No. 47.[1] It is well settled that filing a notice of appeal strips the district court of jurisdiction. Plaintiff knowingly and voluntarily filed an appeal less than twenty-four hours after this Court's ruling. That he now has regrets over the appeal and would have preferred an opportunity to seek reconsideration instead does not undo the legal significance of his decision. Having determined that the district court could offer him no relief, and his only avenue was an appeal, Plaintiff is now bound by that decision. Indeed, he could have sought to withdraw his appeal, *see* Fed. R. App. P. 42(b) and Local Rule 42.1, but he opted not to do that either.

A notice of appeal "is an event of jurisdictional significance"; *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam); that "transfers adjudicatory authority from the district court to the court of appeals." *Manrique v. United States*, 581 U.S. 116, 120 (2017). The general rule is that "[t]he filing of a 'timely and sufficient notice of appeal' divests the district court of jurisdiction 'as to any matters involved in the appeal' or 'as to the matters covered by the notice.'" *New York v. United States Dept. of Homeland Security*, 974 F.3d 210, 215 (2d Cir. 2020) (quoting *Leonhard v. U.S.*, 633 F.2d 599, 609-10) (2d Cir. 1980), *cert. denied*, 451 U.S. 908 (1981)). This general rule helps to promote judicial efficiency by preventing courts

---

[1] The Second Circuit ordered the appeal held in abeyance pending the resolution of this pending motion. See Motion Order, *Nastri v. Dykes*, No. 23-1023, ECF No. 12 (July 28, 2023).

2

from considering the same issues at the same time in the same case. *See New York State NOW v. Terry*, 886 F.2d 1339, 1349 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990); 20 Moore's Federal Practice – Civil § 303.32. Here, seeking reconsideration of the Court's decision to deny the preliminary injunction and its decision on standing are clearly matters involved in the appeal.

The district court retains jurisdiction over specified post-judgment motions despite a party filing a notice of appeal. *See* Fed. R. App. P. 4(a)(4)(A); *Leeber Realty LLC v. Trustco Bank*, 798 Fed. Appx. 682, 687 (2d Cir. 2019) (summary order). However, the exception set forth in Fed. R. App. 4(a)(4)(A) does not apply any time that a party files both a notice of appeal and one of the qualifying post-judgment motions identified in Fed. R. App. 4(a)(4)(A). *See* ECF No. 50 at 2-3.

Plaintiff could have avoided his present procedural predicament had he simply taken the time to properly present his motion for reconsideration to this court *before* appealing to the Circuit Court and thus depriving this Court of jurisdiction. Indeed, some cases have found Plaintiffs whose motions for reconsideration were *already pending* at the time of the filing of a notice of appeal, could be considered by the district court. *See, e.g., Leeber Realty LLC*, 798 Fed. Appx. at 687; *Basciano v. Lindsay*, 2008 U.S. Dist. Lexis 29070, at *2 n.1 & 3-4 (E.D.N.Y. April 9, 2008), *aff'd sub nom. Basciano v. Martiniez*, 316 Fed. Appx. 50 (2d Cir.) (summary order), *cert. denied*, 558 U.S. 1008 (2009); *Coan v. Kaufman*, 349 F. Supp. 2d 271, 273 & 273 n.1 (D. Conn. 2004). Even closer, *simultaneously* filed notices of appeal and motions falling within the ambit of Fed. R. App. 4(a)(4)(A) can be deemed to preserve the

3

district court's jurisdiction. *See, e.g., Hodge v. Hodge*, 269 F.3d 155, 156 & 157 n.4 (2d Cir. 2001) (per curiam); *Xuejie He v. United States*, 2023 U.S. Dist. LEXIS 79800, at *1 (S.D.N.Y. May 8, 2023); *Dizak v. McAuliffe*, 2017 U.S. Dist. Lexis 98344, at *2-3 (W.D.N.Y. June 26, 2017). Here, Plaintiff availed himself of neither option, choosing instead a more expedited path of appeal the same day. Plaintiff then filed his motion for reconsideration *five days after* he filed his notice of appeal, perhaps after reviewing documents that were in his possession in April and available to him at the May hearing that he now determined had newfound significance. *See* ECF Nos. 47 & 50.

Timing matters in this context, or else the jurisdictional significance of a notice of appeal would, in actuality, lack significance. Thus, courts routinely condition exercising jurisdiction over qualifying post-judgment motions, like motions for reconsideration, on the fact that a party filed the motion *before* filing a notice of appeal. *See, e.g., Miller v. Superintendent of the Shawangunk Correctional Facility*, 2020 U.S. Dist. Lexis 198711, at *1-2 (S.D.N.Y. Oct. 26, 2020) ("Although a district court may retain jurisdiction over a motion for reconsideration that is filed *before* a notice of appeal . . . here, where the motion for reconsideration was filed four days *after* the notice of appeal, that rule does not apply.") (citations omitted; emphasis in original); *Whitnum v. Town of Woodbridge*, 2019 WL 1306082, 2019 U.S. Dist. Lexis 47845, at *2 (D. Conn. March 22, 2019) (Hall, J.) ("[W]here a party files a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59, *before it files a notice of appeal*, the district court retains jurisdiction to rule on the motion for

4

reconsideration.") (emphasis added); *see also Xuejie He*, 2023 U.S. Dist. LEXIS 79800, at *1; *Rich v. Associated Brands, Inc.*, 2009 WL 236055, 2009 U.S. Dist. LEXIS 6838, at *2 (W.D.N.Y. Jan. 26, 2009).

*Miller, Whitnum*, and other decisions like them that condition the exercise of jurisdiction over a post-judgment motion falling within the ambit of Fed. R. App. P. 4(a)(4)(A) on a party filing the motion prior to filing a notice of appeal, or at most simultaneously with it, reinforce the jurisdictional significance of a notice of appeal. Courts of Appeal review decisions by district courts that have already been rendered, not ones still subject to review at the trial court.

What is more, *Miller, Whitnum*, and decisions like them align with the plain text of Fed. R. App. P. 4. For example, Fed. R. App. P. 4(a)(4)(A) provides in relevant part that "[i]f a party files in the district court any of the following motions under the Federal Rules of Civil Procedure . . . *the time to file an appeal runs* . . . from the entry of the order disposing of the last such remaining motion[.]" (Emphasis added.) Additionally, Fed. R. App. 4(a)(4)(B)(i) provides in relevant part that "[i]f a party files a notice of appeal after the court announces or enters a judgment—but *before it disposes of any motion* listed in Rule 4(a)(4)(A)—*the notice becomes effective to appeal* a judgment or order . . . when the order disposing of the last such *remaining motion* is entered." (Emphasis added.) These provisions simply defer the time limits for filing a notice of appeal or otherwise indicate that a notice of appeal becomes effective once a court disposes of a specified, pending post-judgment motion. *See, e.g., Hertzner v. Henderson*, 292 F.3d 302, 303 (2d Cir. 2002). Taken together, these provisions

contemplate that a district court retains jurisdiction over a qualifying post-judgment motion when a notice of appeal has not yet been filed or when a post-judgment motion has been filed before a notice of appeal, but the district court has not yet "dispose[d]" of such motion. Fed. R. App. 4(a)(4)(B)(i); *see* Fed. R. App. P. 4(a)(4)(A). Here, Plaintiff's chosen course of action to first file a notice of appeal and then, after thinking better of it, to file a motion for reconsideration does not implicate what the text of Fed. R. App. P. 4 contemplates.

Because Plaintiff did not file his motion for reconsideration before he filed his notice of appeal, or at least simultaneously with it, this Court lacks jurisdiction to consider the pending motion.[2]

## II.  The Court Should Not Reconsider Its Decision.

Even if this Court had jurisdiction to consider the motion, which it does not, Plaintiff's motion to reconsider still must be denied. "Rulings on motions under Rules 52(b) and 59(a) are committed to the sound discretion of the district court, and are reviewed on appeal only for abuse of that discretion." *Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). "The standard for granting a motion for reconsideration is strict." *Ricciuti v. Gyzenis,* 832 F. Supp. 2d 147, 165 (D. Conn. 2011) (citing *Shrader*

---

[2] District courts have held that they retain jurisdiction over qualifying post-judgment motions even when they are filed after a party filed a notice of appeal. *See, e.g., Straw v. Dentons, US LLP*, 2020 U.S. Dist. Lexis 122486, at *4 (S.D.N.Y. July 11, 2020); *Azkour v. Little Rest Twelve*, 2015 U.S. Dist. LEXIS 36023, at *3 (S.D.N.Y. March 23, 2015). Defendant acknowledges that these cases exist but respectfully submits that they are unpersuasive for the reasons set forth in this opposition memorandum.

*v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)); *see also* D. Conn. Civ. R. 7(c)(1) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions."). "Since findings of fact of a trial court are entitled to presumptive validity both on appellate review and in proceedings to amend factual findings and judgment, the moving party has a heavy burden to establish factual error sufficiently serious to merit an amendment." *Wallace v. Brown*, 485 F. Supp. 77, 79 (S.D.N.Y. 1979).

"A party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citation and internal quotation marks omitted). The three primary grounds for reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Roman v. Leibert*, 2017 WL 4286302, 2017 U.S. Dist. LEXIS 158559, at *1 (D. Conn. Sep. 26, 2017) (Hall, J.) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)). "The scope of review on motions for reconsideration is limited to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging gaps of a lost motion with additional matters." *Morien v. Munich Reinsurance America., Inc.*, 270 F.R.D. 65 (D. Conn. 2010). Critically, a motion for reconsideration is not an opportunity to get a proverbial "'second bite at the apple.'" *Cloutier v. Ledyard Board of Education*, 2022 WL 844550, 2022 U.S. Dist. Lexis

49364, at *2-3 (D. Conn. March 21, 2022) (Arterton, J.) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *cert. denied*, 569 U.S. 918 (2013)).

### A. There is no "newly discovered" evidence or manifest injustice that could permit reconsideration.

Given the strict standard Plaintiff must meet for either a motion to amend under Rule 52(b) or to reconsider under Rule 59(e), Plaintiff must plainly identify which of the Court's findings constitutes a "manifest injustice" requiring amendment and what ground he relies on for reconsideration. Plaintiff does not specifically identify the ground for amendment or reconsideration under Rules 52(b) and 59(e), except to state generally that: "The Court should reconsider its decision now to prevent a manifest injustice." *See* ECF No. 50 at 2. Plaintiff does not identify any newly discovered evidence that could properly be considered under Rule 52(b) or Rule 59(e). That is because there is none.

The data table identified by Plaintiff is not *newly discovered* evidence that can be admitted in support of the motion for reconsideration. The data table is only "new" because Plaintiff did not even attempt offer it into evidence at trial. In fact, it was part of an exhibit that Plaintiff had marked for identification but did not move into evidence. *See, e.g.*, ECF No. 34 at 6 (Defendant's Response to Interrogatories). Under Rule 52(b), "[e]xcept for motions to amend based on newly discovered evidence, the trial court is only required to amend its findings of fact based on evidence contained in the record. To do otherwise would defeat the compelling interest in the finality of

8

litigation." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (denying Rule 52(b) motion when the evidence was available to the party and could have submitted at trial). Likewise, "motions under Rule 59(e) are not vehicles for bringing before the court theories or arguments that were not advanced earlier. Nor may the motion present evidence which was available but not offered at the original . . . trial." *Palmer v. Sena*, 474 F. Supp. 2d 353, 355 (D. Conn. 2007) (citation and internal quotation marks omitted). Put simply, Plaintiff cannot seek reconsideration under Rule 52(b) and Rule 59(e) based on evidence he knew or should have known of at trial but did not seek to enter into the record. However, he is attempting to do *exactly that*.

Plaintiff had been aware of the data table since March 20, 2023, when Defendant provided it to him during discovery, subject to numerous objections by Defendants' counsel. See ECF No. 50-1, Defendant's Objections and Responses to Interrogatories Nos. 10-12, 18. Assuming the data table were admitted, its probative value is questionable absent supporting testimony from a witness with personal knowledge of the circumstances underlying the data. *See* 12 Moore's Federal Practice - Civil § 60.42 ("The requirements that newly discovered evidence must be both admissible and credible would seem self-evident. There is no reason to set aside a judgment on the basis of evidence that could not be admitted at a new trial or, if admitted, would be unconvincing."). For Plaintiff to assume its admissibility and probative value now, without Defendant having an opportunity to challenge the evidentiary foundation through cross examination, is wholly improper.

9

Admissibility aside, Plaintiff cannot shift the blame for his failure to submit evidence necessary to prove standing—a burden that he shouldered—to Defendant. *See* ECF No. 50 at 3. Defendant argued there was no credible threat of enforcement as a ground in support of the fact-based motion to dismiss, citing *Adam v. Barr*, 792 Fed. App'x 20 (2d Cir). *See* ECF No. 33 at 6-7. It was Plaintiff's burden to demonstrate standing at the evidentiary hearing, and Plaintiff's counsel was well-aware of the need to do so. *See* Hearing Transcript, attached as **Exhibit A**, at 10:17-11:2, 127:9-10, 256:11-16. Although Plaintiff listed Defendants' discovery responses as one of his proposed exhibits that he marked for identification, *see* ECF No. 34 at 6, he did not attempt to move it into evidence.

Nevertheless, Plaintiff now moves to amend the Court's findings and reconsider the dismissal based on a table of citations that he had been aware of for over a month prior to the evidentiary hearing. Given the strict standard for a motion to reconsider, that is reason enough to deny Plaintiff's motion. There is no basis under either Rule 52(b) or Rule 59(e) for the Court to accept it for reconsideration of any part of the decision dismissing Plaintiff's complaint for lack of standing.

The only other basis for reconsideration the Plaintiff even alludes to is that it is necessary to prevent "manifest injustice." He makes no effort to articulate that injustice, let alone how the unspecific injustice meets the strict standard necessary for reconsideration. Even so, as discussed below, whatever problem Plaintiff may have with the Court's treatment of the record, weighing of the evidence, and application of the law, there was no manifest injustice.

10

### B. The table is not sufficient to show standing.

Assuming that the Court elects to consider the data table, which it should not, the table does not establish standing. It is merely cumulative of other evidence that the regulation is generally enforced and does not provide evidence of particular enforcement that could lead to a different result under *Adam*.

When assessing evidence on a motion to reconsider, "[t]he newly discovered evidence must not be cumulative not only with the evidence that the moving party actually presented at trial, but also with the evidence that the moving party could have, had it exercised due diligence, presented at trial." *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 728 (10th Cir. 1993); *In re Weltzien*, 68 F. Supp. 1000, 1003 (S.D.N.Y. 1946) (cumulative evidence of what was already known at trial cannot permit a rehearing). There was already evidence at trial that Conn. Reg. § 23-4-1(c) was generally enforced. *See* **Exhibit A**, 307:19-308:4, 348:7-17. Indeed, the Court explicitly credited Col. Lewis's testimony that if EnCon found someone carrying a weapon in a state park, then the individual would be charged under the statute. ECF No. 46 at 14.[3] Thus, Plaintiff's description of the data table as "consistent" with Col. Lewis's testimony (ECF No. 50 at 4), while technically accurate, is merely cumulative evidence of enforcement that does not meet his burden on a motion to reconsider.

---

[3] Col. Lewis described two classes of EnCon employees, EnCon Officers and EnCon Rangers. At trial Col. Lewis testified that he could not recall an EnCon Ranger ever enforcing § 23-4-1(c). **Exhibit A**, 251:25-252:17. Though Col. Lewis did not testify to any specific instance of an EnCon officer issuing a citation for § 23-4-1(c), he confirmed that EnCon Officers did generally enforce the law and would enforce the regulation. *Id.*, 348:7-17.

The limited probative value of the data table does not permit a different result under *Adam*, which the Court identified as controlling authority regarding a plaintiff's burden to demonstrate a "credible threat of prosecution." Under *Adam*, confirmation of actual enforcement of the challenged regulation is not enough, by itself, to support a credible threat of enforcement in relation to the Plaintiff. Rather, when enforcement of a law of general application is at issue, the Plaintiff must provide at least some evidence of the specific facts giving rise to enforcement of a statute against his particular conduct. Indeed, the *Adam* Court identified two instances where an individual was not just charged under the challenged statute, but imprisoned as a result of enforcement. 792 Fed. Appx. at 23. Nevertheless, after examining the circumstances surrounding each instance of enforcement, the Court determined that examples were "inapposite" and did not demonstrate that the statute was particularly enforced against the kind of conduct the plaintiff intended to engage in. *Id.*

Notably, those examples in *Adam* offered *more* context surrounding each instance of enforcement than the data table does here. The data table does not provide any evidence of particularized enforcement in relation to the conduct Plaintiff allegedly intended to engage. Furthermore, any inference regarding the circumstances surrounding each citation would be based on pure speculation. For instance, with respect to Plaintiff's Exhibit 10, concerning a chart of weapons offenses, the Court observed that violations could vary widely and "might encompass improper possession of a firearm, but could also encompass possession without a

12

permit, or being a felon in possession of handguns . . . ." ECF No. 46 at 14. Likewise, although he did not have personal knowledge of any specific citation for 23-4-1(c), Col. Lewis's testimony demonstrated that the circumstances surrounding a citation could vary. *See* **Exhibit A**, 348:7-17. In other words, the record demonstrates, and common-sense dictates, that there are many different situations that might result in a criminal law being enforced.

The data table is not any more probative of the credible threat of prosecution than Col. Lewis's existing testimony. While Plaintiff may disagree with the Court's legal analysis, he does not contest that *Adam* is controlling law. Moreover, in light of this Court's analysis under *Adam*, considering the data table does not lead to a different result. *See Mancuso v. Consol. Edison Co.*, 905 F. Supp. 1251, 1265 (S.D.N.Y. 1995) (denying motion to reconsider where "new" evidence was unlikely to change prior decision and cumulative of other evidence already in the record).

This Court succinctly described the conduct Plaintiff intends to engage in and whether the record supported a sufficient likelihood particularized to the regulation's enforcement in relation to Plaintiff: "The evidence in the record shows that (1) Plaintiff has never encountered an EnCon officer while in a state park or forest; (2) the chances of encountering an EnCon officer are rare due to staffing challenges; (3) EnCon officers do not randomly search park patrons for firearms; (4) Plaintiff testified no one has noticed him carrying a concealed firearm in the last year, (Pl.'s Dep. Tr. at 142-43); and (5) Plaintiff was never stopped and ticketed during the period

13

he was unknowingly carrying his firearm in state parks and forests in violation of the regulation." ECF No. 46 at p. 16.

Plaintiff's burden was to demonstrate that his intended conduct, carrying concealed and not engaging in conduct likely to prompt a search that would reveal his firearm, would result in a credible threat of enforcement. He did not carry that burden at trial. In light of those findings, the data table, which, at best, provides evidence of general enforcement cumulative of other evidence elicited at trial, does not call the Court's conclusion into question, let alone require that the Court reverse its decision to prevent a "manifest injustice."

### III.  Conclusion

Plaintiff's motion to reconsider (ECF Nos. 49 & 50) should be denied.

Respectfully submitted,

DEFENDANT-COMMISSIONER
KATIE DYKES

WILLIAM TONG
ATTORNEY GENERAL

BY:   /s/ *Blake T. Sullivan*
Blake T. Sullivan (ct30289)
Thadius L. Bochain (ct31367)
Timothy J. Holzman (ct30420)
Assistant Attorneys General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
Timothy.Holzman@ct.gov
Blake.Sullivan@ct.gov
Thadius.Bochain@ct.gov
Attorneys for the Commissioner

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2023 a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<i>/s/ Blake T. Sullivan</i><br>Assistant Attorney General