**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ., | : | |
| | : | DKT No.: 3:23-cv-00056-JBA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KATIE DYKES, in her official capacity only, | : | |
| | : | |
| Defendant. | : | August 7, 2023 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO HIS MOTION FOR**
**RECONSIDERATION**

The Plaintiff, David J. Nastri, respectfully submits this response to the Defendant's objection to his motion for reconsideration. In sum and first, the Defendant's argument that the Court does not have jurisdiction to consider the motion for reconsideration is squarely contradicted by the Federal Appellate Rules of Procedure and its commentary. Second, reconsideration is necessary to prevent a manifest injustice in contravention of the party presentation rule. Third, the data advanced by Nastri is both admissible and demonstrates that he has standing in this matter.

**I.       The Court Has Jurisdiction To Consider Nastri's Motion.**

The Defendant first challenges the Court's jurisdiction to consider Nastri's motion, arguing that his filing of a notice of appeal prior to his motion for reconsideration deprives the Court of jurisdiction. Dkt. 54, pp. 1-6. Nastri does not dispute that he filed his notice of appeal first and his motion for reconsideration five days later. Dkt. 47 and 49.

Contrary to the Defendant's assertion, Fed. R. App. P. 4's plain text contains no controlling language that would deprive the Court of jurisdiction over a motion for reconsideration filed after a notice of appeal. The lack of such specific restrictions and the

1

plain language of Fed. R. App. P. 4(a)(4)(B)(i)[1] demonstrate that the order of filing is not relevant as long as the motion for reconsideration is timely. There is no dispute that Nastri's motion for reconsideration was timely filed with the Court. Thus, the Court should adhere to the plain language of Fed. R. App. P. 4 and assert jurisdiction over his motion.

If the Court has doubts about the plain language of Fed. R. App. P. 4, the authors of the 1993 amendments to the Federal Rules of Appellate Procedure anticipated precisely the type of situation that is present in this case and explained the intended application of the rule in that situation. In their commentary to the 1993 amendments to Fed. R. App. P. 4, which remain materially unchanged, the authors explained: "A notice [of appeal] filed before the filing of one of the specified motions or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals." Fed. R. App. P. 4, Advisory Committed Notes to 1993 Amendments, Note to Paragraph (a)(4). This commentary is directly applicable to this case and demonstrates that Fed. R. App. P. 4 vests the Court with jurisdiction despite Nastri's notice of appeal preceding his motion for reconsideration.

The Defendant only supplies a single case where a district court actually considered the situation present here. *See Miller v. Superintendent of the Shawangunk Correctional Facility*, No. 1:18-cv-01762 (S.D.N.Y. Oct. 26, 2020).[2] *Miller* contains no

---

[1] "If a party files a notice of appeal after the court announces or enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(i)

[2] The undersigned does not subscribe to Lexis Nexis, and he cannot locate this case on Westlaw. As such, he attaches the copy of the decision that he obtained from Pacer as **Exhibit A**.

analysis of Fed. R. App. P. 4's text or commentary. It also contains no citations to any precedent that directly supports its conclusion that a district court may retain jurisdiction over motions for reconsideration filed after the filing of a notice of appeal. Instead, *Miller* relies on the general rule articulated *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) that a notice of appeal strips the district court of jurisdiction and *Lowrance v. Achtyl*, 20 F.3d 529 (2d Cir. 1994), which applied the Fed. R. App. P. 4 exception to a notice of appeal filed after a motion for reconsideration.

The Defendant's remaining cases either deal with situations where notices of appeal and motions for reconsideration were filed simultaneously or where motions for reconsideration preceded notices of appeal. Those cases have no bearing on the present case.

Finally, the Second Circuit has already accepted Nastri's procedural arguments in this case. In accordance with his duties as an officer of the court, the undersigned candidly informed the Second Circuit of the exact procedural context of this case in a July 27, 2023 motion to hold Nastri's appeal in abeyance. *See* **Exhibit B**. The Second Circuit granted Nastri's motion to hold the appeal in abeyance, citing Fed. R. App. P. 4(a)(4)(A). *See* **Exhibit C**. If Nastri's notice of appeal had deprived the Court of jurisdiction over his motion for reconsideration, the Second Circuit could have issued an order retaining jurisdiction and proceeding with the appeal in the normal course of business. It did not.

For these reasons, the Court should find that it has jurisdiction over Nastri's motion for reconsideration.

**II.**     **The Court Should Reconsider Its Decision To Prevent Manifest Injustice.**

The Defendant argues that Nastri has not met his burden of showing either newly discovered evidence or the existence of manifest injustice. Dkt. 54, pp. 8-10. Nastri, however, did not assert a claim of newly discovered evidence in his motion for reconsideration. Instead, he based his motion for reconsideration solely on the prevention of manifest injustice. Dkt. 50. He carries his burden.

Despite the Defendant's protests to the contrary, Nastri has clearly identified the manifest injustice that he seeks to have rectified in this matter. The parties made specific choices on how to litigate the standing issues in this matter. In her motion to dismiss, the Defendant never raised a challenge as to whether Nastri had shown a credible threat of prosecution. Instead, the Defendant's challenge focused on whether Nastri had alleged a sufficient intent to carry a firearm into state parks and forests at a definite point in the future so as to make his injury actual and imminent. Dkt. 22-1, pp. 6-8. To the extent that the Defendant actually raised an argument as to a credible threat of prosecution as she claims she did, Dkt. 54, p. 10, she only did so in the context of her argument that Nastri had not alleged a sufficient intent to violate Conn. Agencies Reg. § 23-4-1(c). Dkt. 33, 6-7. Thus, Nastri's presentation of evidence at the preliminary injunction hearing focused on the issues that the parties had fairly disputed.

The Supreme Court has solidly established the principle of party presentation. *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020). Under that principle, courts themselves must rely on the parties to frame issues for decision. *Id*. While the rule is not ironclad and courts do have a modest initiating role, *see id*., it is no stretch to conclude that courts should be cautious in *sua sponte* considering issues not disputed by

4

the parties in their framing of the issues and afford parties an opportunity to be heard as to those issues.

Nastri does not dispute that the Court has a well-established initiating role in determining whether it lacks subject matter jurisdiction, including whether he lacks standing. He, however, does submit that the principles of due process – running through the party presentation rule – do afford him the right to be fairly apprised of what precise issues are in play and to be heard on their resolution. Nothing in the briefing or argument before the Court fairly apprised Nastri of the issue that whether he faces a credible threat of prosecution based on the Defendant's enforcement of Conn. Agencies Regs. § 23-4-1(c) was in play. Otherwise, he would have sought to introduce the statistics that the Defendant produced regarding her enforcement of Conn. Agencies Regs. § 23-4-1(c).

Nastri now asks for the opportunity to be heard on that specific issue, and to deny him the opportunity to be heard as to the issue of enforcement that the Court has raised would work manifest injustice in this case.

### III.   The Defendant's Statistics Are Both Admissible And Establish Nastri's Standing.

The Defendant suggest that the admissibility of the statistics that it produced to Nastri is questionable – apparently on the basis that they are inaccurate. Dkt. 54, p. 9. She also argues that they do not establish standing. Dkt. 54, pp. 11-14. Both arguments miss the mark.

First, the Defendant's suggestion that the admissibility of the statistics that it produced to Nastri is questionable raises a serious question as to whether she knowingly and intentionally provided Nastri with misleading data. Nastri's interrogatory was straightforward: "State how many times DEEP has arrested or cited someone for a

5

violation of Conn. Agencies Regs. 23-4-1(c) since January 1, 2013. Please provide the information in annual format…." Dkt. 50-1, pp. 12-13. It did not ask for vague statistics. It asked for very specific data for which the Defendant provided a definite answer.

The Defendant's stated objections do not shed any light on why she now thinks this data is inadmissible. She raised a relevance objection, but the evidence is clearly relevant to the Court's decision as indicated by the Court's specific citation to *Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019)'s requirement that a plaintiff marshal examples of enforcement actions against the proscribed conduct. Dkt. 46, p. 7. The Defendant raised an overbreadth objection, but the parties narrowed the scope of Nastri's request by 3 years. Dkt. 50-1, pp. 12-13. To the extent that the Defendant wants to narrow it further, the Defendant could not exclude all of the data produced. The Defendant also raised an unduly burdensome objection, but she still produced the data. Finally, the Defendant asserted the work-product and/or attorney-client privileges with respect to the data produced. She, however, made no effort to withhold the data produced, to raise those objections with the Court prior to producing it, or to provide Nastri with a privilege log. In other words, she has waived any such privilege claims.

The Defendant also does not make any argument as to why the data is not admissible or relevant now. At best, her argument as to admissibility is that she must probe the supporting testimony of a witness with personal knowledge of the circumstances underlying data. Dkt. 54, p. 9. That argument, however, suggests that she doubts the authenticity of the data that she produced under oath in response to a sworn discovery request. It also suggests that the data that she produced under oath is inaccurate and was not addressed in a supplemental disclosure. Both claims would be

especially troubling if that is really what the Defendant is suggesting because her discovery responses would have been deliberately misleading to begin with and she would have failed to correct them in a timely fashion. Finally, with respect to the issue of admissibility, nothing prevented the Defendant from obtaining an affidavit from the person under her supervision who compiled the data to explain any inconsistencies in it. She did not do so.

Thus, the Court should find the data produced in response to Nastri's interrogatories both admissible and relevant.

Second, the statistics establish Nastri's standing despite the Defendant's attempt to analogize them to the NIBERS data adduced during the preliminary injunction hearing. They show that DEEP has regularly issued Conn. Agencies Reg. § 23-4-1(c) citations since 2016. While the number of citations is not numerous (not exceeding 10 per year at the most), the numbers match Colonel Christopher Lewis' testimony of how Conn. Agencies Reg. § 23-4-1(c) is enforced. Colonel Lewis testified that his division has received calls about firearms in Connecticut state parks and forests since he began overseeing it in 2019. Dkt. 50-2, pp. 307-09. He further testified that his division responds to investigate those calls by sending two or more officers to check out the report. *Id*. As the Court did note, he then testified that, if his officers found someone carrying a weapon in a state park, they charge that person with a violation of Conn. Agencies Reg. § 23-4-1(c). *Id*. at p. 348.

Colonel Lewis also provided testimony as to why concealed carrying of handguns – such as the kind that Nastri engages in – still may result in a member of the public spotting a firearm. In particular, he testified:

Q: Now, I believe Attorney Atkinson had asked you some questions about how concealed carrying might reduce some of the risks that you had identified in your declaration. Do you recall that?
A. Yes.
Q. Are there still -- is concealed carry always perfect?
A. No.
Q. And can you just explain why it's not?
A. Inadvertently, even though it's concealed carry, people move a certain way, clothing shifts and the presence of the firearm is revealed to bystanders or others.

**Exhibit D, pp. 321-22.** Additionally, Colonel Lewis provided an example how a common movement of simply holding a door for someone else could inadvertently reveal a firearm. *Id*. at pp. 321-25.

Colonel Lewis also testified that members of the public commonly experience confusion when they see a firearm in state parks and forests and that he typically observes it when people call his division's dispatch center to report someone with a firearm or the sound of shooting in a state park or forest. *Id*. at p. 279.

This evidence taken as a whole demonstrates that the Defendant enforces Conn. Agencies Reg. § 23-4-1(c) primarily when her department receives a report from the public about an unauthorized firearm. Her department dispatches officers to investigate and enforcement is naturally predicated on whether they can respond in time to catch an offender. The statistics that she supplied show that her officers occasionally do catch an offender and charge him. Colonel Lewis' testimony demonstrates that, regardless of how someone attempts to conceal a firearm, concealment is not perfect, and members of the public are likely to spot it at some point during the performance of specific acts.

The statistics produced in this case, coupled with the evidence and avowal of enforcement from Colonel Lewis, demonstrate that Conn. Agencies Reg. § 23-4-1(c) is not a moribund law, but rather one that is being enforced as best as the Defendant can

and which she and her agents avow that they will continue to prosecute individuals for violating. The statistics also demonstrate, per the Court's application of *Adam*, that the Defendant is enforcing Conn. Agencies Reg. § 23-4-1(c) against the exact sort of conduct that Nastri is proscribed from engaging in. Dkt. 46, p. 7. Thus, Nastri does face a credible threat of prosecution, and the Court should find that he has standing.

**CONCLUSION**

For the foregoing reasons, the Plaintiff, David Nastri, respectfully requests that the Court grant his motion for reconsideration, find that he has adequately demonstrated standing, and reach the merits of this action.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Cameron L. Atkinson /s/