UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ., | : | |
| | : | DKT No.: 3:23-cv-00056-JAM |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KATIE DYKES, in her official capacity only, | : | |
| | : | |
| Defendant. | : | AUGUST 27, 2024 |

## SECOND AMENDED COMPLAINT

1. This is an action for declaratory and injunctive relief that challenges the constitutionality of Connecticut's state regulation that bans the carrying of handguns in Connecticut state parks for the purpose of self-defense. Connecticut's ban on handguns in state parks cannot pass constitutional muster under the historical standard that the Supreme Court announced in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (Jun. 23, 2022), and the Second Amendment requires the Court to put a stop to Connecticut depriving its citizens of the most popular means of self-defense where it is undoubtedly the hardest for first responders to protect them.

## PARTIES

2. Plaintiff David J. Nastri, Esq. is a United States and Connecticut citizen who maintains his permanent home in Cheshire, Connecticut.

3. The Defendant, Katie Dykes, is the Commissioner of the Connecticut Department of Energy & Environmental Protection (DEEP), and she is sued in her official capacity only. In her role as DEEP Commissioner, Dykes possesses rulemaking authority to adopt, modify, or repeal regulations pursuant to the procedures established by

Connecticut's Uniform Administrative Procedure Act (UAPA) – codified at Conn. Gen. Stat. § 4-166 et seq. *See* Conn. Gen. Stat. §§ 22a-5 and 23-4. She additionally possesses the authority to enforce the regulations that she promulgates through "conservation officers" – uniformed police officers who are employed by DEEP and empowered to conduct warrantless arrests for violations of the statutes and regulations that the DEEP enforces. Conn. Gen. Stat. §§ 22a-5, 23-4, 26-5, and 26-6.

## JURISDICTION

4.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 2201, and § 1651 as well as 42 U.S.C. § 1983. Venue is appropriate under 28 U.S.C. § 1391 because all of the parties are domiciled in Connecticut and all of the factual events giving rise to the cause of action occurred in Connecticut.

## FACTUAL ALLEGATIONS

### *Connecticut's Prohibition On Handgun Possession In State Parks.*

5.      Connecticut has established an official policy

> to conserve, improve and protect [the state's] natural resources and environment and to control air, land and water pollution in order to enhance the health, safety and welfare of the people of the state… and to manage the basic resources of air, land and water to the end that the state may fulfill its responsibility as trustee of the environment for the present and future generations.

Conn. Gen. Stat. § 22a-1.

6.      In line with this policy goal, Connecticut maintains approximately 139 state parks and state forests through the Connecticut DEEP. *See* **Exhibit A**.

7.      Connecticut has taken the position before the Connecticut Supreme Court that maintaining "state parks and forests are an important part of the state's conservation responsibilities." *State v. Ball*, 260 Conn. 275, 284-85 (2002).

8. The Connecticut Supreme Court also noted that "[f]rom] time immemorial, the state's uninhabited and undeveloped land traditionally has been used for hiking, picnicking, camping, hunting, trapping and fishing." *Id*. at 284. It found that "[a]s the state has developed and become more populated, the state forests and some state parks have been preserved in an undeveloped condition so as to continue to provide opportunities for these traditional uses." *Id*. at 284.

9. Critically, the Connecticut Supreme Court found that that "[t]he state has conserved and managed its undeveloped land primarily for these traditional purposes, subject to some public safety restrictions." *Id*. at 284-85.

10. Nothing has changed since *Ball*. Connecticut's state parks and forests remain open for a wide variety of recreational activities, including hiking, camping, hunting, fishing, and picnicking.

11. While Connecticut does impose licensing requirements for hunting, fishing, and camping, it generally does not utilize a permit system to control entrance to state parks and forests for recreational activities that comport with Connecticut's state park rules.

12. Instead, Connecticut's state park rules specifically establish that [s]tate parks and state forest recreation areas shall be open for public use daily between sunrise and sunset." Conn. Agencies Regs. § 23-4-1(a).[1]

---

[1] For the Court's convenience, the undersigned has attached the regulation as **Exhibit B** since it is somewhat difficult to locate using a traditional legal research tool.

13. Connecticut prohibits the carrying of firearms, archery equipment, or other weapons in state parks and forests unless the DEEP specifically authorizes their carrying. Conn. Agencies Regs. § 23-4-1(c).

14. Violation of this prohibition is an infraction under Connecticut law and is punishable by a $35 fine. *See* Conn. Agencies Regs. § 23-4-5.[2]

15. The DEEP also possesses the authority to evict a person from a park for twenty-four hours immediately upon their arrest or citation for the infraction. *Id*.

16. If a person is convicted of such an infraction under the procedures established in Conn. Gen. Stat. § 51-164n, Defendant Dykes possesses the authority to ban the person from entering a state park or forest for up to one year. Conn. Gen. Stat. § 23-4.

17. Connecticut permits the limited carrying of firearms, archery, and other weaponry for the purpose of hunting in state parks and forests within certain specified seasons. This includes permitting individuals to carry handguns up to .22 caliber rimfire for the purpose of hunting small game on state-owned land. **Exhibit D**, **p. 1.**

18. Connecticut, however, does not permit non-hunting members of the public who possess valid Connecticut pistol permits to carry handguns for the purposes of self-defense in case of confrontation while using state parks or forests.

19. Defendant Dykes' subordinates confirmed this reading of Connecticut law when Nastri made inquiries in an effort to determine if he could carry a handgun for the purpose of self-defense while using state parks and forests for lawful recreational purposes. On November 18, 2022, he sent an email inquiry to Defendant Dykes asking

---

[2] This regulation is attached as **Exhibit C**.

her to clarify whether Conn. Agencies Regs. § 23-4-1(c) was a specific provision to regulate hunting and whether there were other rules permitting the carry of handguns by Connecticut pistol permit holders in Connecticut state parks and forests. *See* **Exhibit M, p. 3**.

20. On November 22, 2022, Deputy DEEP Commissioner Mason Trumble responded to Nastri's inquiry by email, directing him to a web link containing a 2020 report prepared by the Connecticut Office of Legislative Research's Chief Attorney – Janet Kaminski Leduc – and entitled "Carrying Handguns in Connecticut State Parks or Forests." *Id*. at p. 2. The report is attached as **Exhibit N**.

21. Despite the specific disclaimer that Attorney Leduc placed at the very top of the opinion and which clearly states that the report is not to be considered a legal opinion, Defendant Dykes and Mr. Trumble converted it into the official legal opinion of the state of Connecticut by providing it to Nastri in answer to his questions.

22. Attorney Leduc's report confirms that a person may legally possess a handgun in a state park or forest "only when carrying the handgun for hunting small game… or participating in other authorized activities, such as at a firearms range or during a hunter education class. **Exhibit N**, **p. 1.**

23. After receiving and reviewing this information from Mr. Trumble, Nastri emailed him later on November 22, 2022 and brought the United States Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S.Ct. 2111 (Jun. 23, 2022) to his attention. **Exhibit M**, **p. 1-2**. He asked Mr. Trumble to convey his request to Defendant Dykes to take immediate steps to amend Conn. Agencies Regs. § 23-4-1(c)

to permit the carrying of handguns in state parks and forests for the purpose of self-defense in compliance with *Bruen*. *Id.*

24. Neither Defendant Dykes nor Mr. Trumble responded to Nastri's email. Defendant Dykes has also made no effort to amend Conn. Agencies Regs. § 23-4-1(c) to permit the carrying of handguns in state parks and forests for the purpose of self-defense.

### *Plaintiff David J. Nastri, Esq.*

25. It is hard to find a more responsible and exemplary member of his community than the Plaintiff, David J. Nastri. He is a combat veteran, a financial advisor, an attorney, a kidney donor, and an active member of his community.

26. In 2001, Nastri donated one of his kidneys to a local school teacher to save her life.

27. In 2009-2010, Nastri deployed to Afghanistan as a Staff Sergeant in the 1st Battalion, 102nd Infantry Regiment, Connecticut Army National Guard in support of Operation Enduring Freedom. During that deployment, Nastri saw combat. Nastri's awards during his military service included the Afghanistan Campaign Medal with a Campaign Star, the Army Good Conduct Medal, and the Louisiana Emergency Service Medal. He was honorably discharged in March 2012.

28. As part of his military service, Nastri received comprehensive training on the safe and effective use of firearms, including handguns, and he was required to demonstrate proficiency in their safe and effective use under combat conditions. Nastri then answered his country's call and proved the efficacy of his training in combat. In other words, Nastri has received far more training on the safe and responsible use of firearms

than the average person does, and he has proven his ability to adhere to that training under high-pressure circumstances that the average person will likely never encounter.

29. Nastri currently holds four FINRA licenses as a financial advisor, including a Series 7, a Series 63, a Series 66, and a Life & Health license. In addition to passing the rigorous background checks required for these licenses, Nastri holds a clean disciplinary record for all of his licenses.

30. Nastri earned his Master's in Business Administration (M.B.A.) in 2001 and his law degree in 2018 from Quinnipiac University. He became an attorney duly licensed to practice law in Connecticut on November 2, 2018, and he remains in good standing with no record of a disciplinary history.

31. Since his licensure and in what spare time he has left over from his full-time employment as a financial advisor, Nastri has represented numerous veterans on a pro bono basis in Veterans' Administration matters.

32. Nastri received his pistol permit approximately 30 years ago, and he completed all of the safety training associated with obtaining it. He subsequently has held it in good standing since receiving it. Since his current permit does not reflect its initial issue date, Nastri cannot say for certain when he first received it, but his best recollection is that he has held it for more than 30 years.

33. Nastri uses Connecticut state parks and forests on a regular basis throughout the year – most often during the summer. He enjoys hiking with his girlfriend at Sleeping Giant State Park in Hamden, Connecticut and Naugatuck State Forest when their schedules permit. He also jogs multiple times per week on the Farmington River Canal Trail – a state-operated park.

34. Nastri intends to and will continue to make use of Connecticut state parks and forests in the immediate and foreseeable future for the purpose of recreation such as hiking.

35. Nastri's prospective use of Connecticut state parks and forests is not speculative. The original complaint in this action was filed on January 14, 2023. *See* Dkt. 1. Since it was filed, he has used state parks and forests twice:

   a. On January 14, 2023, he went to Sleeping Giant State Park for a hike by himself.

   b. On January 15, 2023, he went to Sleeping Giant State Park with his girlfriend for another hike.

36. Nastri actively carries his handgun almost every time he leaves his home and almost every place that he goes, but he abides by the laws and rules that govern where he may carry it. When he must go to a place where the law does not permit him to carry a firearm such as a government building, Nastri secures his firearm in a locked safe that he has bolted to the floor of his motor vehicle.

37. While making such regular use of Connecticut state parks and forests, Nastri seeks to carry a handgun for the purpose of self-defense like he does every other place where Connecticut may not prohibit his carrying of firearm in a manner consistent with the Second Amendment.

38. Conn. Agencies Regs. § 23-4-1(c), however, is so strict that Nastri cannot even store his handgun in a locked container in his motor vehicle at a state park or forest parking lot because he is technically within the confines of a Connecticut state park or forest and would be in violation of the law if he possessed a firearm in his motor vehicle.

Thus, every time that Nastri intends to visit a state park or forest, he must leave his handgun at home.

39. Nastri understands Connecticut's laws pertaining to hunting. He has no intention of using a handgun to hunt at all, let alone hunt outside of a legal hunting season.

40. Nastri also understands Connecticut's other laws pertaining to conservation. He has no intention of using a handgun to violate those laws.

### *The Nature Of Trails In Connecticut State Parks And Forests*

41. Connecticut maintains trails in many of its state parks and forests. These trails – often miles in length – facilitate a wide variety of recreational activities, including hiking, wildlife observation, horseback riding, and bicycle riding. They also facilitate access for hunting and fishing.

42. Since Connecticut's objective in the parks and forests is to preserve natural habitats and undeveloped land, Connecticut's state parks and forests typically offer limited access points for motor vehicles, and a trail may lead a person a mile or more before they can access a roadway or another exit from a state park or forest. Sleeping Giant State Park and Naugatuck State Forest are perfect examples of this.

43. Sleeping Giant State Park – located in Hamden, Connecticut – has been a Connecticut state park since 1924. *See* **Exhibit E**. It primarily consists of an approximately 32-mile "backcountry trail system" that features various scenic attractions. **Exhibit F, p. 2.**[3] It also offers wildlife spotting, picnicking, a cross country ski trail, camping, fishing, and rock climbing. **Exhibit H**.

---

[3] This exhibit contains information from the Sleeping Giant Park Association, which Connecticut itself recommends as a resource on Sleeping Giant State Park. *See* **Exhibit G**.

44. According to the official map provided by the Connecticut DEEP, there is no motor vehicle access to the center of Sleeping Giant State Park. **Exhibit I**. Instead, motor vehicle access to the park is limited to strategically placed trail head parking locations around the park's perimeter. *Id*.

45. The result of this orientation is that a person seeking help from first responders, including law enforcement, could be forced to wait whatever time it takes for first responders to navigate miles of rough and mountainous terrain to reach them. In other words, response times from first responders to a call for help could easily exceed half an hour or more.

46. Naugatuck State Forest covers an area of land that is part of the towns of Cheshire, Hamden, Naugatuck, Oxford, and Beacon Falls. **Exhibit J, p. 4.** It offers opportunities for *hunting, target shooting*, fishing, hiking, letterboxing, mountain biking, and snowmobiling. *Id*.

47. Unlike Sleeping Giant State Park, Naugatuck State Forest is much more accessible by motor vehicle due to its smaller size. It contains numerous parking areas at the trail heads around the perimeter of the state forest according to the official map provided by the Connecticut DEEP. **Exhibit K.** Despite its increased accessibility, there are portions of the forest where first responders would have to cover a mile or more on foot to reach someone calling for help, which would necessitate a longer response time.

48. Naugatuck State Forest is also home to the High Rock Cooperative Shooting Range – one of the state's four public shooting ranges. **Exhibit L**. Patrons can access the range – within Naugatuck State Forest – to shoot pistols, revolvers, and other firearms. *Id*.

### *Defendant Dykes Actively Enforces Conn. Agencies Regs. § 23-4-1(c)'s Firearms Ban In State Parks*

49. Defendant Dykes and her subordinates actively enforce Conn. Agencies Reg. § 23-4-1(c) whenever they catch a violator.

50. Upon information and belief, Defendant Dykes and her subordinates have issued citations for violations of § 23-4-1(c) every year since 2016:

   a. 2016 – 6 citations.
   b. 2017 – 10 citations.
   c. 2018 – 5 citations.
   d. 2019 – 1 citation.
   e. 2020 – 10 citations.
   f. 2021 – 7 citations.
   g. 2022 – 6 citations.

51. Upon information and belief, Defendant Dykes and her subordinates also responded to an incident of someone brandishing a gun inside Sleeping Giant State Park on or about March 19, 2024.

### **COUNT ONE – CONNECTICUT'S PROHIBITIION ON THE POSSESSION OF HANGUNS IN STATE PARKS VIOLATES THE SECOND AND FOURTEENTH AMENDMENTS**

52. Paragraphs 1 through 51 are incorporated herein.

53. Nastri has a statutory cause of action to bring this claim under 42 U.S.C. 1983.

54. The U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (Jun. 23, 2022) has completely reshaped Second Amendment analysis in the United States.

55. Prior to *Bruen*, courts employed a combination of a malleable public-policy interest-balancing test and means-end scrutiny (e.g., strict scrutiny) to analyze Second Amendment claims. *See, e.g.*, *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2015).

56. *Bruen* abolishes the quasi-public policy and scrutiny analyses completely. Its reshaping of the analysis starts and ends with two basic principles:

 a. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126.

 b. "[T]he government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*.

57. The Second Amendment's plain text indisputably covers the conduct that Nastri seeks to engage in: the lawful carrying of a pistol or revolver for the purpose of self-defense in case of confrontation.

58. Under *Bruen*, the burden of proof now falls on the Defendant to show a historical analogue to Connecticut's modern regulations that is both "well-established and representative." *Id*. at 2133. There are no such historical analogues that can save Conn. Agencies Regs. § 23-4-1(c).

59. The only Second Amendment exception remotely applicable to Conn. Agencies Regs. § 23-4-1(c) is the "sensitive places" exception established in *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) and reaffirmed in *Bruen*, 142 S.Ct. at 2133-34. The Defendant cannot possibly justify Connecticut's outright ban on the carrying of handguns in state parks and forests from that exception though.

60. *Heller* itself only cited two historical examples of "sensitive places:" "schools and government buildings." 554 U.S. at 626.

61. *Bruen* built on the specificity of *Heller*'s examples, adding "legislative assemblies, polling places, and courthouses." 142 S.Ct. at 2133.

62. Neither these specific examples nor *Heller*'s and *Bruen*'s broader categories are remotely analogous to Conn. Agencies Regs. § 23-4-1(c). Our nation's history is also completely devoid of any suitable analogue to Conn. Agencies Regs. § 23-4-1(c).

63. Conn. Agencies Regs. § 23-4-1(c) go even further than the test proposed by New York in *Bruen*, which the Supreme Court rejected as defining the category of "sensitive places" "far too broadly." *Bruen*, 142 S.Ct. at 2133-34. New York proposed to define "sensitive places" as "where the government may lawfully disarm law-abiding citizens include all 'places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available.'" *Id*. at 2133.

64. *Bruen* rejected this test on the basis that it "would eviscerate the general right to publicly carry arms for self-defense…." *Id*. at 2134.

65. Conn. Agencies Regs. § 23-4-1(c)'s prohibition fails even this test. Law-enforcement and other public-safety professionals are rarely present or readily available in state parks or forests. The undeveloped nature of state parks and forests means that vehicular access is extremely limited. In cases readily imaginable, law enforcement would need to traverse miles on foot to reach a person who calls for help, assuming that their cellphones would have sufficient reception to request it. In other words, response times could exceed half an hour or more.

66. There is simply no justification for Connecticut's continued maintenance and enforcement of the ban. It already permits the carrying of handguns in state parks and forests for hunting, and, in the instance of the four state shooting ranges located in state forests as shown in **Exhibit L**, it even provides for the voluminous discharge of firearms and other weapons in state parks for recreational purposes. Thus, there is no question that Connecticut can still enforce all of its other laws while permitting law-abiding citizens such as Nastri to carry a handgun for self-defense in state parks and forests.

67. Thus, Connecticut's refusal to allow Nastri to carry a handgun into state parks and forests for the lawful purpose of self-defense and Conn. Agencies Regs. § 23-4-1(c) violate his Second Amendment rights as guaranteed by the Fourteenth Amendment both facially with respect to Conn. Agencies Regs. § 23-4-1(c) and as-applied with respect to its refusal to allow Nastri to carry a handgun into Sleeping Giant State Park, Naugatuck State Forest, and on the Farmington River Canal Trail.

## **PRAYER FOR RELIEF**

Wherefore, the Plaintiff seeks the following relief:

A. A declaratory judgment that Conn. Agencies Regs. § 23-4-1(c)'s prohibition on the carrying of handguns for the purpose of self-defense in state parks and forests violates the Second and Fourteenth Amendments to the United States Constitution on its face;

B. Alternatively, a declaratory judgment that Conn. Agencies Regs. § 23-4-1(c)'s prohibition on the carrying of handguns for the purpose of self-defense in state parks and forests and Defendant Dykes' refusal to allow Nastri to carry a handgun into Sleeping Giant State Park, Naugatuck State Forest, and on the Farmington River Canal

Trail violates the Second and Fourteenth Amendments to the United States Constitution as applied to the parties' conduct

      C.     A permanent injunction barring the Defendants from enforcing Conn. Agencies Regs. § 23-4-1(c);

      D.     Alternatively, a permanent injunction barring the Defendants from enforcing Conn. Agencies Regs. § 23-4-1(c) against Nastri when he carries a handgun for self-defense into Sleeping Giant State Park, Naugatuck State Forest, and on the Farmington River Canal Trail;

      E.     Costs and attorneys' fees;

      F.     Any such other and further relief that the Court deems just and reasonable.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq. (ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Cameron L. Atkinson /s/